FRED S. SAUNDERS *vs.* LYDIA S. SAUNDERS, Admx.

Hancock.    Opinion May 27, 1897.

*Contracts.    Presumptions.    Evidence.*

When valuable services are rendered by one person at the request, or with the knowledge and consent of another, under circumstances not inconsistent with the relation of debtor and creditor between the parties, a promise to pay for such services is ordinarily implied on the part of him who knowingly receives the benefit of them, and such promise is enforced on grounds of justice in order to compel the performance of a legal and moral duty.

A son rendered services after he became of age, upon his father's farm. *Held;* that the defendant, the father's administratrix, in a suit brought by the son to recover for these services, is not entitled to an instruction, "that the plaintiff cannot recover unless an express promise can be shown on the part of the father to pay the son, or to give him certain property therefor which he failed to do."

All true contracts grow out of the mutual intention of the parties; and if in a particular instance there is evidence arising from the situation, conduct or family relationship of the parties tending to show that the service was rendered without expectation of any payment or without other payment than such as was received as the service progressed, it cannot be said as a matter of law that a contract is implied on the part of the defendant to pay for such services.

In such cases, as neither the justice of the plaintiff's claim, nor the moral obligation or duty of the defendant is at once apparent, the law creates no contract in favor of the plaintiff and, aside from the ordinary burden of proof, raises no presumption against him. It simply leaves it as a question of fact to be determined by the jury upon the peculiar circumstances and conditions existing in each case.

If it can properly be said that there is any presumption in a given case that the services rendered to a father by a son after he becomes of age, are gratuitous, it is clearly a presumption of fact and not of law. It rests on probability and is the effect of evidence, the result of inferences to be drawn from the facts in the case, at the discretion of the jury,—the force of it varying according to circumstances.

A contract which, as a question of fact, not of law, is implied, does not differ from an express one except in form of proof.

Upon a motion for a new trial, the court held that the jury undoubtedly found as a fact that there was a mutual understanding that the plaintiff was to have the property at the decease of the father; and that the services in question were rendered by the plaintiff in the expectation and belief that he was to

receive compensation in that form; and that the conduct of the father, the situation of the family and all the circumstances existing in the case justified such expectation and belief. *Held;* that this conclusion of the jury is not so unmistakably wrong as to justify the court in setting the verdict aside.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

The case is stated in the opinion.

*A. W. King* and *G. M. Warren*, for plaintiff.

*H. E. Hamlin*, for defendant.

Counsel argued:

1. That there is no evidence in this case to show any express contract to pay for services rendered by plaintiff after majority.

2. That there is not sufficient evidence to overcome the presumption of law that the services were gratuitous or to warrant the implication that plaintiff was to be compensated for his services; nor is there any evidence showing any mutual understanding or agreement between himself and his father that he was to be compensated.

3. That the first instruction asked for by defendant's counsel should have been given to the jury.

4. That the instruction to the effect that the presumption is weaker after majority than before was erroneous and should not have been given.

Where a party renders services for another in the hope of a legacy and in sole reliance upon a person's generosity without any contract, express or implied, that compensation should be provided for him by will or otherwise, and the party to whom the services were rendered dies without making such provision, no action lies. But where, from the circumstances of the case, it is manifest that it was understood by both parties that compensation should be made by will, and none is made, an action lies to recover the value of such services. Wood on Master and Servant, 2nd Ed. § 71; *Martin* v. *Wright*, 13 Wend. (N. Y.) 460; *Campbell* v. *Campbell*, 65 Barb. (N. Y.) 645; *Eaton* v. *Benton*, 2 Hill (N. Y.) 576; *Patterson* v. *Patterson*, 13 Johns. (N. Y.) 379; *Shakespeare* v. *Markham*, 10 Hun, (N. Y.) 311; *Woodward* v. *Bugsbee*, 4 Thomp.

etc., (N. Y.) 393; *Robinson* v. *Raynor*, 28 N. Y. 494; *Lee* v. *Lee*, 6 Gill. & J. (Md.) 316.

The declarations of a parent may admit the filial devotion and real worth of his child, and the profit he may derive from her services. They may reach farther and disclose his own sense of obligation and his settled purpose to compensate. But all this is insufficient to raise a promise. *Leidig* v. *Coover*, 47 Pa. St. 534.

But when a son seeks to recover compensation for such services as his filial duty and common humanity require him to render his aged parent, he must come here with some better proof than loose declarations of gratitude and of an intention to compensate, made by an old man in the extremity of his last sickness. *Zimmerman* v. *Zimmerman*, 129 Pa. St. 229.

The law approves and encourages the assumption of such a relation, as promotive of the best interests of all parties by uniting them in an orderly family life. If nothing more appears than helpfulness in such relations, it will not permit an implication of a contract to make compensation in money on either side. It will presume, also, that what was done proceeded from a higher attribute of human nature than the desire to bargain and get gain, namely, an unselfish love of a parent for his children and of the children for their parent. *Livingston* v. *Hammond*, 162 Mass. 377.

The presumption continues as against services rendered after a child arrives at majority and can only be overcome by proof of an express contract to pay or by facts strong enough to clearly establish a mutual understanding and agreement between the father and son that the relation of debtor and creditor existed between them.

The presumption is as strong after majority as before.

"It is well settled by repeated decisions in this state (Vermont) that when a child after becoming of age remains at home, continuing a member of the family, receiving support and performing services, the law implies no contract by which the relation of debtor and creditor arises between the parent and the child; and in order to create any right of recovery either way, for support or for services, an express contract must be shown." *Sprague* v. *Waldo*, 38 Vt. 141; *Davis* v. *Goodenow*, 27 Vt. 715; *Cobb* v. *Bishop*, 27 Vt. 624; *Lunay* v. *Vantyne*, 40 Vt. 501.

Where parties sustain the relation of parent and child either by nature or adoption, the former in the absence of an express agreement cannot be legally required to pay for services rendered by the child nor the latter to pay for maintenance. *Otis* v. *Hall*, 117 N. Y. 131; *Beardsley* v. *Hotchkiss*, 96 N. Y. 201, 221.

When a daughter after arriving at the age of 21 years continues to live, labor and render service in her father's family, with his knowledge and consent, but without any agreement or understanding that she is to be paid for her services, the law raises no presumption of a promise by the father so as to enable her to maintain an action to recover compensation for her services. *Munger* v. *Munger*, 33 N. H. 581; *Concord* v. *Rumney*, 37 N. H. 125; *Bundy* v. *Hyde*, 50 N. H. 116, 123; *Heywood* v. *Brooks*, 47 N. H. 231, 234.

Contracts between parents and children must be proved by direct, positive, express and unambiguous evidence. The terms must be clearly defined and all the acts necessary to a contract's validity must have especial reference to it and nothing else.

When children work for parents after arriving at age the law implies no contract on the part of the parent to pay for the services. *Poorman* v. *Kilgore*, 26 Pa. St. 365, (67 Am. Dec. 425 and note); *Williams* v. *Hutchinson*, 3 N. Y., 3 Comstock, 312, (53 Am. Dec. 301 and note); *Murphy* v. *Corrigan*, Penna. 28 Atl. Rep. 947; *Bixler* v. *Sellman*, (Md.) 27 Atl. Rep. 137; *Zimmerman* v. *Zimmerman*, (Pa.) 18 Atl. Rep. 129; *Appeal of Barhite*, (Pa.) 17 Atl. Rep. 617; *Holmes* v. *Waldron*, 85 Maine, 312.

SITTING: PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, STROUT, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict of $988.30 for services rendered by him on his father's farm, after he became of age, and the case comes to this court on exceptions, and a motion for a new trial as against evidence.

At the trial the defendant requested the presiding judge to

instruct the jury "that the plaintiff cannot recover unless an express promise can be shown on the part of the father to pay the son or to give him certain property therefor which he failed to do." The presiding ·justice declined to give this instruction except as shown in the charge, and it appears from the colloquy at the close of the charge, though not in the formal bill of exceptions, that the defendant excepted to the refusal to give this instruction.

In the charge the presiding judge instructed the jury as follows, .inter alia :

" There is no express promise shown or undertaken to be shown. Mr. Saunders does not claim that he and his father sat down together and made a trade that he was to work for his father for a certain sum per month,—a specific agreement made about it; but he says that he rendered these services under such circumstances as would justify him in believing that he was to be paid for them. . . . . So in every case where there is not an express agreement testified to, . . . . we have to investigate the circumstances ·of the service rendered, if any, and see whether or not under all these circumstances it was expected that pay should be given for it. . . . . Now what is shown here? .And whether or not under all the circumstances it seems to you that whatever work was done by this young man was done under such circumstances as justifies you in believing that the old gentleman was to pay him for it in some way, not necessarily in money; that may not have been the understanding, it may have been in some other way; that he has failed to pay, and failing to do that, that his estate must now pay the money. . . . . Now under all the circumstances and if you believe Mr. Eaton, the last witness, as to the talk with the old gentleman, do you believe that it was understood between the son and the father that the son was to be paid for those services? If he was, then he is entitled to his pay and the question is, was the work done with that expectation? . . . . It has been suggested by the testimony of Mr. Eaton that he expected, perhaps, a deed of the place, or to have it willed to him by the old gentleman and that that may have been the understanding. If that was the understanding, then it would fol-

low that it was understood that there was to be some compensation, which was to be the farm itself  .   .   .   .   and if it did not go to him, if he did not get the pay he expected, all he is entitled to is fair pay in money."

At the close of the charge the judge added:  "I am requested to give you this instruction and the plaintiff consents: 'That the presumption is that between father and son, services rendered by the latter for the former are gratuitous, and this rule applied to a son who has attained his majority as well as a minor.'  At the request of the plaintiff I will add this, that the presumption is weaker after majority than before."  To this qualification thus added the defendant excepted.

It is the opinion of the court that the instructions given were sufficiently favorable to the defendant, and that he was not aggrieved by the refusal to give the instruction first requested calling for proof of an express promise.

It is an elementary principle that when valuable services are rendered by one person at the request, or with the knowledge and consent of another, under circumstances not inconsistent with the relation of debtor and creditor between the parties, a promise to pay is ordinarily said to be implied by law on the part of him who knowingly receives the benefit of them, and is enforced on grounds of justice in order to compel the performance of a legal and moral duty.    As observed by Chief Justice Marshall in *Ogden* v. *Saunders*, 12 Wheat. 214, "a great mass of human transactions depends upon implied contracts, which grow out of the acts of the parties.    In such cases the parties are supposed to have made those stipulations which as honest, fair and just men they ought to have made."    But the word "contract" is almost universally employed "to denote an undertaking voluntarily entered into between the parties, not drawing into contemplation any creation of the law." Bishop Cont. § 191.    All true contracts grow out of the mutual intention of the parties; and if, in a particular instance there is evidence arising from the situation, conduct or family relationship of the parties tending to show that the service was rendered without expectation of any payment or without other payment than

such as was received as the service progressed, it cannot be said as a matter of law that a contract is·implied on the part of the defendant to pay for such services. *Cole* v. *Clark*, 85 Maine, 338, and authorities cited.

In such cases, as neither the justice of the plaintiff's claim, nor the moral obligation or duty of the defendant, is at once apparent, the law creates no contract in favor of the plaintiff, and aside from the ordinary burden of proof raises no presumption against him. It simply leaves it as a question of fact to be determined by the jury upon the peculiar circumstances and conditions existing in each case. It is then incumbent upon the plaintiff to satisfy the jury that the services were rendered under circumstances consistent with contract relations between the parties, and that the defendant either expressly agreed to pay for the services, or to give certain property therefor, or that they were rendered by the plaintiff in pursuance of a mutual understanding between the parties that he was to receive payment, or in the expectation and belief that he was to receive payment, and that the circumstances of the case and the conduct of the defendant justified such expectation and belief. If it can properly be said that there is any presumption in a given case that the services rendered to a father by a son after he becomes of age, are gratuitous, it is clearly a presumption of fact and not of law. It is not a uniform and constant rule attached to fixed conditions, and applicable only generically. It is a conclusion from a process of reasoning which the mind of any intelligent person would apply under like circumstances, and it is applicable only specifically. It rests on probability and is the effect of evidence, the result of inferences to be drawn from the facts in the case at the discretion of the jury,—the force of it varying according to circumstances. 2 Wharton Ev. §§ 1226-1237; Best on Ev. §§ 303-326. As said by Chief Justice PETERS in *Belmont* v. *Vinalhaven*, 82 Maine, p. 531: "Most presumptions are mixed of law and fact, or are presumptions of fact which the law may allow the jury to find."

In accordance with this view were the remarks of Chief Justice Shaw in *Guild* v. *Guild*, 15 Pick. 130: "Those who think that

the law raises no implied promise of pecuniary compensation from the mere performance of useful and valuable services, under the circumstances supposed, are nevertheless of opinion that it would be quite competent for the jury to infer a promise from all the circumstances of the case; and that although the burden of proof is upon the plaintiff, as in other cases, to show an implied promise, the jury ought to be instructed that, if under all the circumstances, the services were of such a nature as to lead to a reasonable belief that it was the understanding of the parties that pecuniary compensation should be made for them, then the jury should find an implied promise. . . . . The conclusion, that the question is of less practical importance than might at first appear, is founded upon the obvious consideration, that it is scarcely possible that a case can be left to stand upon the mere naked presumption. . . . . There must of necessity be a great diversity of circumstances distinguishing one case essentially from another."

So in *Spring* v. *Hulett*, 104 Mass. 591, the court say: "The law implies a promise to pay for reasonable value of benefits received, only when there is no evidence that they were conferred upon other grounds than that of contract. When the relations between the parties are such as to warrant the inference that the benefit was bestowed gratuitously, by way of hospitality, or by reason of any obligation, legal or moral, it becomes a question of fact to be submitted to the jury, to determine whether it was in reality gratuitous or upon the basis of contract." Substantially the same doctrine is laid down in *Fitch* v. *Peckham*, 16 Vt. 151, where the court say, "it is incumbent on the plaintiff to show that she performed the services which were the foundation of her claim, expecting at the time to be paid therefor, and that the testator so understood it, or that he had sufficient reason to believe that she expected to make him her debtor for such services." And this language is quoted with approval in *Andrews* v. *Foster*, 17 Vt. 556. Yet the two last named cases were cited in *Lunay* v. *Vantyne*, 40 Vt. 501, in support of the statement that an "express promise must be proved" under such circumstances. It is evident that this apparent contrariety of expression has arisen from a

failure to distinguish between a contract which is created by law, and is said to be "implied by law," or implied "as a matter of law" on the ground of justice and legal obligation, and a contract which is implied as a matter of fact, that is to say, a contract which is found to have an existence in fact by inference from the circumstances and conditions proved. But in order to compel the discharge of a legal and moral duty, as has been seen, a contract is often "implied by law," which never had an existence in fact. It is doubtless true that in the latter class of cases "it is only by a fiction that a contract or promise is implied." . . But "in the present state of the law, it is necessary for the sake of legal conformity to adopt this phraseology." Metc. on Cont. 9. "A contract," says Mr. Bishop, "which as a question of fact, not of law, is implied, does not differ from an express one except in form of proof." Bishop on Cont. §257.

With the exception of the requested instruction in regard to the presumption of gratuity as between father and son, which was too favorable to the defendant, the instructions given to the jury in the case at bar were in entire harmony with the principles above stated.

It is also well-settled law that when a person renders service to another under an agreement within the statute of frauds which the other party refuses to perform, an action will lie against the party so refusing to recover the fair value of the services rendered. *Dix* v. *Marcy*, 116 Mass. 416, and cases cited.

With reference to the motion the evidence before the court has been carefully examined. It is not questioned that the plaintiff rendered laborious service on his father's farm during the four years and a half from the time he attained his majority until his father's death; that during a large part of the time when his father was absent attending to other business, the plaintiff practically had sole charge of the farm, laboring with more than ordinary diligence and fidelity. There is also credible testimony that in reply to an intimation from one of the neighbors that "he was working Fred too hard," the father said he intended for Fred to have what he had. The plaintiff himself was excluded by the

statute from giving testimony in relation to what took place before his father's death, and as usually happens in this class of cases the evidence in support of the plaintiff's contention is not as definite and complete as could be desired.   It is not shown that the plaintiff ever presented or asserted any claim for compensation from the time of his father's death, in 1881, until the formal demand on the administratrix in 1894; and it is strongly urged in the argument of the learned counsel for the defense that this fact, together with his silence respecting his claim at the time he left the place in 1892, should be deemed a strong circumstance tending to show that he did not then consider himself entitled to any compensation. But it appears that the plaintiff, after the death of his father, continued to carry on the farm, living there with his mother during all that time; and it might readily be suggested in explanation of his silence and delay that he was unwilling to deprive his mother of a home, and that he continued to cherish the hope that the arrangement with his father would be recognized by the voluntary action of the heirs.   The jury undoubtedly found as a fact that there was a mutual understanding that the plaintiff was to have the property at the decease of the father; and that the services in question were rendered by the plaintiff in the expectation and belief that he was to receive compensation in that form; and that the conduct of the father, the situation of the family and all the circumstances existing in the case, justified such expectation and belief; and it is the opinion of the court that this conclusion of the jury is not so unmistakably wrong as to justify the court in setting the verdict aside.

*Exceptions and motion overruled.*