PERXEDE LIBERTY *vs.* HOWARD P. HAINES, Administrator.

York.    Opinion November 18, 1907.

*Contracts. Evidence. Burden of Proof. Preponderance of Evidence.*

While any consideration, however small, may be regarded as sufficient to support a contract, yet the effect of a consideration when proved or admitted, and the effect of the evidence offered to prove such contract are entirely different propositions.

The phrase " burden of proof " like the phrase " ordinary care " is a relative term and must be considered, not only in the light of the conflict of evidence, but also with reference to the subject matter to which the burden of proof relates. And with respect to ordinary merchandise accounts and payments thereof, and of cases involving simple issues of fact, the rule is well established that where a substantial conflict of testimony appears, the verdict will not be disturbed.

But there is a class of cases, however, such as proving the existence and contents of a lost will, or proving an agreement to bequeath by will, or mutual mistakes sufficient to justify the reformation of an instrument, where in order to sustain the burden of proof the rule is that the evidence must be clear, convincing, conclusive, and such as to satisfy the mind of the court. And this requirement does not militate against the rule that in civil suits a preponderance of the evidence is all that is required.

In this class of cases, the rule which obtains in the ordinary case is so varied in every common law jurisdiction, at least, that although all the while it only requires a preponderance of the evidence, yet to establish a preponderance, the proof must be clear, convincing and satisfactory.

Where it is sought to establish an ante mortem contract that results in a post mortem disposition of an estate, the evidence required to establish such contract must come within the rule governing the quality of proof required to establish the reformation of an instrument, to prove the contents of a lost will, or a deed, or an agreement to bequeath by will.

There is no class of cases in which a higher kind of proof should be demanded than that which seeks to establish oral contracts calculated to subvert the muniments of title and divert the descent of intestate property from its legal channel. No class of cases is more susceptible to the temptation of fraud and none in which it can be more easily practiced. And in this class of cases the contention of any plaintiff must disclose motives of good faith, a claim consistent with the circumstances and probabilities of the situation and be supported by clear, positive and convincing proof.

The case at bar was an action of assumpsit brought by the plaintiff to recover against the estate of the decedent the sum of $13,720, upon an account annexed for services performed, and also to recover $20,000 upon an alleged special promise on the part of the decedent in his lifetime to pay said sum to the plaintiff. The alleged contract for the payment of said sum of $20,000 was oral.

The facts as claimed by the plaintiff upon which she sought to recover are as follows: (1) That she engaged in the employment of the decedent from October 1, 1889 to February 22, 1903, as set out in her claim, as an ordinary servant, for the agreed price of $20 per week; (2) That the decedent in his lifetime and for many years prior to his death was afflicted with a loathsome and highly contagious disease, so noxious in its character that it was fraught with great danger to his attendant, and required unusual and special care; (3) That later after the plaintiff had discovered the nature of the disease with which the decedent was afflicted and had expressed her intention of at once declining to give him further care and attention and of leaving the house, he expressly agreed in consideration that she would remain and continue her services to pay her in addition to the wages before alleged to have been agreed upon, the additional sum of $20,000 and the house. At the trial of this case the plaintiff recovered a verdict for $26,266.17.

*Held:* That the plaintiff has failed to sustain her alleged contract for $20,000, but is entitled to judgment for $6,266.17 the amount found by the jury in payment for the time she was unquestionably a servant of the decedent.

On exceptions and motion by defendant. Exceptions not considered. Motion sustained unless remititur be made.

Assumpsit on account annexed brought by the plaintiff to recover against the estate of Samuel Haines, late of Saco, York County, deceased intestate, the sum of $13,720 for services alleged to have been performed by the plaintiff for the decedent in his lifetime, and also to recover the sum of $20,000 upon an alleged special contract on the part of said decedent in his lifetime to pay the plaintiff said sum of $20,000.

The alleged special contract to pay the aforesaid sum of $20,000 was not in writing.

The account annexed was as follows:

      " Estate of Samuel Haines to Perxede Liberty,    Dr.

"To 698 weeks' services as housekeeper and assistant, and for care of clothing, washing, ironing, mending, food furnished to be taken away, and meals furnished said Haines during his lifetime, all between Oct. 1 1899 and Feb. 22, 1903, at $20 per week,
           $13,960.00

           CREDIT.

"By divers small payments each year, not exceeding $20. in any year,           $240.00

      "Balance,          $13,720.00"

The writ also contained counts as follows:

"Also for that the said plaintiff, heretofore to wit, on the first day of October, A. D., 1889, began to perform certain valuable services for the said Samuel Haines, to wit, acted as his housekeeper and assistant in a house furnished by and belonging to said Samuel Haines, cared for his clothing, did his washing, ironing, mending, performed the same services last named for various of his employees, furnished cooked food for said Samuel Haines to take away from said house, furnished meals for said Samuel Haines at said house,

and from that time continuously each day until the twenty-second day of February A. D. 1903, this plaintiff continued to perform said services for said Samuel Haines, with his knowledge, at his special instance and request, and with an expectation upon the part of this plaintiff to be paid and upon the part of said Samuel Haines to pay for said services. And the plaintiff avers that during each of said years, said Samuel Haines paid as part payment for said services a sum not exceeding twenty dollars in any year; that upon said twenty-second day of February, A. D. 1903, said Samuel Haines died; that thereafterwards, to wit, upon the first Tuesday of April A. D. 1903, this defendant was appointed the administrator of the goods and estate that were of said Samuel Haines. And the plaintiff avers that on the twenty-ninth day of June, A. D. 1904, she filed in Probate Court for said County of York her said claim in writing against the estate of said Samuel Haines, supported by her affidavit, and that the same was done before or within eighteen months after affidavit was filed in the Probate Court that notice had been given by said Howard P. Haines, as administrator, of his appointment as such, and that the same was done at least thirty days before the commencement of this suit, and that payment thereof was at the same time demanded of said Howard P. Haines in his said capacity; ' By reason of all which said Samuel Haines, in his lifetime, promised the plaintiff to pay her so much as her said services were fairly and reasonably worth, yet neither the said deceased, in his lifetime, nor since his decease has the said administrator ever paid the same, to the damage of the plaintiff, as she says, in the sum of forty thousand dollars.

"Also for that the said plaintiff, heretofore, to wit, upon the first day of October, A. D. 1889, at the special instance and request of said Samuel Haines, in his lifetime, promised and agreed with said Samuel Haines that she would come to said Saco, and in the house to be furnished by said Samuel Haines, would act as his housekeeper and assistant, care for his personal needs and comfort, attend to his washing, ironing, mending, furnish him with food to be eaten by him at said home and in her company, and also furnish him with food to be taken from said home elsewhere, would allow

him to have his office for the transaction of business and as a repository for his valuable and private papers and documents at said house, would assist him in the care of his business and contribute to his personal happiness and comfort, all during such time as said Samuel Haines might live or until such time as he saw fit to make other arrangements. And the said Samuel Haines then and there in consideration of all the foregoing, promised the plaintiff that at the termination of said services upon her part he would pay to her the sum of twenty thousand dollars in money, and in addition thereto would convey to her by warranty deed the aforementioned house or home. And the plaintiff avers that in accordance with said contract and agreement, she did, heretofore to wit, upon the first day of October, A. D. 1889, come to Saco, go to the house furnished by said Samuel Haines, and there begun to perform and continued to perform all the services before mentioned, and so performed said services from said time up to the twenty-second day of February, A. D. 1903, when said Samuel Haines died. And this plaintiff avers that she has performed all and singular the stipulations and agreements in her said contract with said Samuel Haines, but that said Samuel Haines in his lifetime never paid said money or made conveyance to her of said real estate, and that this defendant in his said administrative capacity, since the decease of said Samuel Haines, though requested, has never paid the same, but refuses and neglects so to do. And the plaintiff avers that on the twenty-ninth day of June, A. D. 1904, she filed in Probate Court for said County of York, her said claim in writing against the estate of said Samuel Haines, supported by her affidavit, and that the same was done before or within eighteen months after affidavit was filed in the Probate Court that notice had been given by said Howard P. Haines, as administrator, of his appointment as such, and that the same was done at least thirty days before the commencement of this suit and that payment thereof was at the same time demanded of said Howard P. Haines in his said capacity; yet neither the said deceased, in his lifetime, nor since his decease has the said administrator ever paid the same; by reason of all which, an action has accrued to the plaintiff to have and recover, as she says, the sum of forty thousand dollars."

The next and last count was the usual omnibus count with the following specifications :

"The plaintiff gives notice that under the foregoing omnibus count she will offer evidence tending to prove the performance of services for said Samuel Haines in his lifetime during the period of time between October 1, 1889, and Feb. 22, 1903, said services consisting of care of his house, washing, ironing, mending, cooking food for him to be eaten upon the premises and to be taken elsewhere, assistance to him in the carrying on of his business, and administering to his personal happiness and physical comfort, being for services and claims made in the previous counts in this writ, and which claims have been filed in the Probate Court for said County of York in writing against the estate of Samuel Haines, supported by her affidavit, which was done before or within eighteen months after affidavit was filed in the Probate Court that notice had been given by said Howard P. Haines, as administrator of his appointment as such, and that the same was done at least thirty days before the commencement of this suit and that payment thereof was at the same time demanded of said Howard P. Haines, in his said capacity ; yet neither the said deceased, in his lifetime, nor since his decease has the said administrator ever paid the same."

Plea, the general issue with a brief statement interposing the statute of frauds and the statute of limitations.

The plaintiff's claim as filed by her in the Probate Court, previous to bringing suit thereon, was as follows :

"Estate of Samuel Haines to Perxede Liberty,          Dr.

"To 698 weeks services as housekeeper and assistant and for care of clothing, washing, ironing, mending, food furnished to be taken away, and meals furnished said Haines during said time, all between Oct. 1, 1889, and Feb. 22, 1903, at $20. per week.    $13,960.00

"Also to amount due by contract with said Haines in his lifetime to deed to said Liberty house and lot in Saco, and to pay her $20,000.00 in consideration of said Liberty moving into said house and caring for his clothing, doing his mending, washing, preparing food,

and taking care of the rooms used by said Haines as an
office, as per agreement, but land never so deeded nor
amount paid and still due                                    20,000.00
                                                            _____
                                                            $33,960.00

"CREDIT.

"By divers small payments each year not exceed-
ing $20. in any year                                           240.00
                                                            _____
"Balance                                                    $33,720.00

"This is to give notice to the administrator of the estate of
Samuel Haines, late of Saco, deceased, of the above claim, in
accordance with section 14 of chapter 89 of the Revised Statutes of
Maine, and I hereby demand payment of the same.

"Dated at Saco this 29th day of June, A. D. 1904.

                                               "PERXEDE LIBERTY."

This claim was supported by the affidavit of the claimant as
required by the statute.

Tried at the September term, 1906, of the Supreme Judicial
Court, York County. Counsel for the defense waived any objec-
tion to the plaintiff as a party, and consented that she might testify
which she did. Verdict for plaintiff for $26,266.17.

During the trial the defendant took exceptions to the refusal of
the presiding Justice to give certain requested instructions and to
the admission of certain testimony admitted against the defendant's
objection, and also after verdict filed a general motion for a new
trial. The exceptions were not considered by the Law Court.

The case appears in the opinion.

*Cleaves, Waterhouse & Emery and Foster & Foster*, for
plaintiff.

*Symonds, Snow, Cook & Hutchinson and Allen & Abbott*, for
defendant.

SITTING : WHITEHOUSE, PEABODY, SPEAR, CORNISH, KING, JJ.

SPEAR, J. This is an action of assumpsit brought by the plaintiff to recover against the estate of Samuel Haines, late of Saco, County of York, the sum of $13,720 upon an account annexed for services performed, and also to recover $20,000 upon a special promise upon the part of the decedent in his lifetime to pay said sum to plaintiff. The alleged contract for the payment of the latter named sum was oral.

The facts as claimed by the plaintiff upon which she seeks to recover, are first : that she engaged in the employment of the decedent from October 1, 1889 to February 22, 1903, as set out in her claim, as an ordinary servant, for the agreed price of $20 per week ; second, that Samuel Haines in his lifetime, and for many years prior to his death was afflicted with a loathsome and highly contagious disease, so noxious in its character that it was fraught with great danger to his attendant, and required unusual and special care ; third, that later after the plaintiff had discovered the nature of the disease with which the decedent was afflicted and had expressed her intention, of at once declining to give him further care and attention and of leaving the house, he expressly agreed in consideration that she would remain and continue her services, to pay her in addition to the wages before alleged to have been agreed upon, the additional sum of $20,000 and the house.

Having carefully examined the testimony and the briefs of counsel, we are of the opinion that no useful purpose can be served in giving an extended analysis of the evidence upon which our conclusion may be based ; besides, such an analysis, involving pure questions of fact, would extend far beyond the space allotted to the ordinary opinion. We shall therefore examine the testimony only so far as is necessary to explain the conclusions at which we arrive.

Without further discussion, the court are of the opinion that the verdict of the jury sustaining the affirmative of the first proposition may be permitted to stand, although the decision is accompanied with much doubt. The evidence is plenary that the plaintiff was a servant in the employ of the decedent during the period for which

she seeks to recover, but that she should permit her wages to remain unpaid to the alleged amount of $13,960 puts a heavy strain upon the most optimistic credulity.

As to the second and third propositions, we are clearly convinced that the finding of the jury should be set aside. While upon these issues there is a conflict of testimony, yet, in view of the nature of the case, the fact of a conflict is not decisive. The phrase "burden of proof," like the phrase "ordinary care," is a relative term and must be considered, not only in the light of the conflict of the evidence, but also with reference to the subject matter to which the burden of proof relates. With respect to ordinary merchandise accounts and payments thereof, and of cases involving simple issues of fact, the rule is well established that where a substantial conflict of testimony appears, the court will not disturb the verdict of the jury.

There is another class of cases, however, in which the courts hold that the burden of proof must rise above the mere conflict of testimony and become clear, convincing and conclusive, to sustain a verdict.

Says Wigmore, Vol. 4, section 2498: "But a stricter standard in some such phrase as 'clear and convincing proof' is commonly applied to measure the necessary persuasion for a charge of fraud; for the existence and contents of a lost will; for an agreement to bequeath by will; for mutual mistakes sufficient to justify reformation of an instrument; and for a few related cases."

The contents of a lost will may be proved by testimony of recollection as well as by copy. All the authorities concur that the burden of proof requires that they shall be clearly and satisfactorily proved. The generally accepted rule is found in the language of the court in *Davis et als.* v. *Sigourney*, 8 Metcalf, 487: "To authorize the probating of a lost will, by parol proof of its contents, depending upon the recollection of witnesses, the evidence must be strong, positive and free from all doubt."

In *Mundy* v. *Foster et als.*, 31 Mich. 313, a case in which the plaintiff sets up an agreement to bequeath by will, the court say in discussing the quality of proof required: "Such an oral arrange-

ment in order to be enforced to establish rights in lands at variance with the muniments of title, must be clearly and satisfactorily proved by testimony that is above suspicion."

*Southard, Aplt.,* v. *Curley,* 134 N. Y. 148, is a case, involving an action to reform a contract upon the ground that owing to a mistake it failed to express the agreement between the parties, in which the court held that the burden of proof was upon the defendant of clearly establishing his contention by satisfactory proof, and collated many forms of phrasing the quality of proof required, some of which are quoted as follows: Lord Hardwick, in *Henikle* v. *Rotal Exchange Assior. Co.* (1 Vessey, Sr. 317), said: "There ought to be the strongest proof possible." In *U. S.* v. *Monroe,* 5 Mason, 572, the court said: "The evidence must be clear, unequivocal and decisive, not evidence which hangs equal or nearly equilibrio." In *Gillespie* v. *Moon,* 2 Johns. Chan. 585, Chancellor Kent remarks: "Does it satisfy the mind of the court?" Fry on Spec. Perf. (2 Am. ed.): "The proof must be clear, irrefragable and the strongest possible." *Coale* v. *Merryman,* 35 Md. 382: "The evidence must be such as to satisfy the mind of the court." *Lyman's Admr's* v. *Little,* 15 Vt. 576: "Equity will not correct a mistake in a written instrument except on clear and undoubted testimony." *Miner* v. *Hess,* 47 Ill. 170: "It must leave little, if any doubt." *Sawyer* v. *Hovey,* 3 Allen, 331: "The mistake must be made out according to the understanding of both parties by proof that is entirely exact and satisfactory." *Tufts and Colby* v. *Larned,* 27 Ia. 330: "The evidence of mistake must be such as will strike all minds alike as being unquestionable and free from reasonable doubt." *Mead* v. *Westchester F. I. Co.,* 64 N. Y. 453: "The proof upon this point should be so clear and convincing as to leave no room for doubt." *Ford* v. *Joyce,* 78 N. Y. 618: "The mistake should be proved as much to the satisfaction of the court as if admitted." *Linn* v. *Barkey,* 7 Ind. 69: The mistake "must be established beyond a reasonable controversy." *Hill* v. *Hill,* 10 Wkly. Dig. (N. Y.) 239: "The proof of the mistake should be clear and positive; it should not leave a reasonable doubt."

Our own court have fully sustained the spirit of the rule laid down in the above citations, in *Connor* v. *Pushor*, 86 Maine, 300, a real action, in which the defendant sought to disprove the plaintiff's seizin by oral evidence of a lost deed. The Justice trying the case instructed the jury that the evidence required to sustain such a defense should be clear and convincing, both as to the loss of the deed and its contents. The court in sustaining the ruling say: "The defendants urge that the jury were misdirected with regard to the amount of evidence necessary to establish the existence and contents of a lost and unrecorded deed. We think not. True, they were instructed that the evidence should be clear, convincing and satisfactory. But we think this instruction was correct. . . . This requirement does not militate against the rule that in civil suits a preponderance of evidence is all that is necessary. When an attempt is made to batter down recorded deeds by oral evidence of non-existing and unrecorded deeds, the oral evidence must be clear and strong, satisfactory and convincing, or it will not preponderate. It must be "plenary." So held in *Moses* v. *Morse*, 74 Maine, 472. The rule is the same when the deed is claimed to be inaccurate. The error must be established by proof that is plenary. *Parlin* v. *Small*, 68 Maine, 289.

It would appear from these citations that in this class of cases, the rule which obtains in the ordinary case is so modified in every common law jurisdiction, at least, that although all the while it only requires a preponderance of the evidence, yet to establish a preponderance, the proof must become "clear, convincing and satisfactory."

The case at bar fairly falls within the category of the class of cases above cited by Wigmore, and the decisions above quoted, in which the burden of proof requires the most clear, convincing and satisfactory evidence. While in terms it does not set up proof of an agreement to make a will, or of the contents of a lost will, it nevertheless involves a post mortem disposal of property based upon an ante mortem parol agreement calculated to effectuate such disposal. An offer to prove an agreement to make a will is nothing more than proof of an ante mortem agreement for a post mortem

disposal of property.    Proof of the contents of a lost will is precisely the same.    The result in all three cases is to effect a disposal of the decedent's property after his death by orally proving an agreement alleged to have been made prior to his death.

The case at bar in its legal aspect, bears a marked resemblance to a testamentary disposition of real and personal property, and is strikingly parallel with *Mundy* v. *Foster*, 31 Michigan, supra, which involved an oral agreement to bequeath by will.    The one is an agreement to make a will to transfer; the other, a direct agreement to transfer, the stipulation to vest property in the contractee being the purpose and essence of the covenant in each case, and accomplishing precisely the same result, a disposition, pro tanto, of the decedent's estate.    The one is sought to be proven under the same conditions as the other, the promissor in each case being dead, all the other circumstances necessarily being the same. Each is also sought to be established by ex parte evidence of the oral declarations of a deceased party whose lips are closed to any possible refutation of the claim asserted in subversion of the natural and legal descent of his property.

Therefore in the case before us, typical of a class now becoming somewhat common, the court is of opinion that the evidence required to establish an ante mortem contract that results in a post mortem disposition of an estate must come within the rule governing the quality of proof required to establish the reformation of an instrument, to prove the contents of a lost will, or a deed, or an agreement to bequeath by will.

We can conceive of no class of cases in which a higher kind of proof should be demanded than that which seeks to establish oral contracts calculated to subvert the muniments of title and divert descent of intestate property from its legal channel.    No class is more susceptible to the temptation of fraud and none in which it can be more easily practiced.

Applying these rules of evidence to the plaintiff's contention, we think she has failed to sustain the burden of proof as to both the second and third propositions upon which she seeks to recover $20,000 from the estate of the decedent.    Her second proposition

which, in the testimony, furnishes the occasion and establishes the foundation of her alleged contract, is not supported by such evidence as is required in this class of cases. In the first place, her attitude upon this proposition is inconsistent, improbable and self-contradictory. If her testimony is true, she was so shocked and excited in 1892 at the discovery of Mr. Haines' alleged real affliction, that she at once accused him of deceiving her and declared that if he would place $20,000 on the table, she would not stay with him, and then began packing her things.

Now in view of the fact, that, after many years, she had discovered the deception of Mr. Haines as to the malady with which he was alleged to have been suffering, and was so indignant that she was preparing to leave his employ at once ; and that upon her making this loathsome discovery, and proposing forthwith to escape from its dangers, Mr. Haines then and there promised to pay her, in consideration that she would remain and assume the risks of his care, the sum of $20,000 and the house ; and notwithstanding her mind was in such a state of rebellion, to even this proposition, that it was only upon the persuasive influence of Dr. Mayberry, that the dangers which she was assuming might be reduced to a minimum by the exercise of proper care, that-she was induced and concluded to accept these large considerations and remain ; nevertheless, while this shocking discovery and the consequent agreement to remain and take care of Mr. Haines were the only consideration disclosed by the testimony for the contract involving this very large amount of property, over $6000 having been allowed for her other services, she never mentioned, either directly or by inference, in the sworn statement of her claim against the estate of Samuel Haines, filed in the Probate Court, that he was afflicted with a noxious disease; that she knew anything about such a disease ; that she ever administered the slightest care to his person for anything ; or treated him as a nurse in any particular ; but simply said he agreed "to pay her $20,000 in consideration of said Liberty moving into said house and caring for his clothing, doing his mending, washing, preparing food, and the taking care of the rooms used by said Haines as an office, as per agreement."

Now her contention in her testimony that the inception of her contract was based upon the discovery of Mr. Haines real affliction, and that the consideration was that she should remain and perform the revolting duties required in the treatment of his repulsive disease, is utterly inconsistent with, and self-contradictory of, her sworn statement filed in the Probate Court for which she claimed the sum of $20,000. It is inconceivable that her sworn statement purporting to contain true specifications of her claim, should contain no mention of the actual consideration, especially when that consideration, from its very nature, if her testimony is true, must have been so vividly impressed upon her mind as never to have been forgotten, and, besides, would have furnished at least a colorable reason for the existence of so unusual a contract. Such testimony fails to satisfy the mind of the court that the decedent was afflicted with any such disease as the plaintiff claims in her testimony.

And the other testimony in the case, weakened as it is by the plaintiff's version as above considered, also fails to establish the fact. While two physicians, respectable as far as we know, declared that Mr. Haines was afflicted with the disease alleged, yet other physicians equally credible whose opportunity was such that the condition of Mr. Haines, if as claimed, could not have been concealed, found no evidence of the disease upon him. Dr. Goodall of Saco attended him six weeks for a broken leg, during which time it was not contended that Mrs. Liberty nursed him or in any way cared for him, yet Dr. Goodall says that, if he had been suffering for several years to such an extent as to require treatment from one to four times a week, as claimed by the plaintiff, and that treatment had been omitted for six or seven weeks, "I should think they would have reached an almost intolerable condition. I should think the odor would have been noticed in the room first. He would have been suffering intensely and the ulcers would have spread more deeply and widely." In connection with this evidence it should be borne in mind that Mrs. Liberty testified that he was never free from ulcers during all the years while she claims to have nursed him, yet no evidence of the alleged disease was found by Dr. Goodall. Again, during his last illness he was attended by Dr. Haley of

Saco, who testified that during the time which he treated him he discovered no evidence of the disease alleged. In addition to all this, the undertaker who prepared the body for burial, declares that he saw neither ulcers nor scars nor blotches upon the back of Mr. Haines, and that his skin was in good condition and smooth as would naturally be expected of a person of his age.

It further appears from the testimony that men afflicted, as it is claimed Mr. Haines was, are intuitively anxious to conceal all evidence of the disease, yet. the decedent, if the plaintiff's contention is true, although he knew that a discovery was altogether probable, if not absolutely certain, employed an entirely new physician to attend him with his broken leg, instead of commanding the services of those who were already acquainted with his condition.

When fairly considered, the weight of evidence preponderates heavily in favor of the defendant upon this proposition.

But it may be said that the verdict of a jury is not to be set aside because the evidence preponderates against it, and that the proposition now under discussion is not one involving the terms of the contract but whether the decedent was afflicted with a certain disease, and therefore should fall within the ordinary rule. The answer to this suggestion is that, when a collateral fact is an essential element of a contract and the proof of the contract falls within the strict rule above laid down, such collateral fact comes within the same rule. It is not sufficient that the proof of such fact raises a material conflict,—it must be such as to satisfy the mind of the court.

The third proposition, involving the alleged contract by the terms of which the plaintiff says she is entitled to $20,000 from the estate of Samuel Haines, is supported by the same evidence and falls within the same analysis as the proposition just discussed. As already shown, the very foundation upon which the contract is sought to be erected, was the alleged existence and discovery in 1892 of the condition of the decedent. The same inconsistency and improbability with respect to the consideration stated in her claim filed in the Probate Court and that proved at the trial, appear in the evidence offered to sustain the terms of the contract. Upon this phase of the case it will be observed that not only was the evidence offered to

prove the terms of the contract inconsistent with the claim filed in the Probate Court, but in one important feature, absolutely contradictory of it. The very first specification of the consideration named in the claim filed was "of said Liberty moving into said house." But it appears from the testimony that Mrs. Liberty went to Saco, and moved into the Franklin Street house and assumed her relations, whatever they were, to Mr. Haines, long before the alleged $20,000 contract was claimed to have been entered into at all. While a good deal of latitude may be allowed for error of statement in pleading, and filing of claims in Probate Court, it is nevertheless true that some regard for the facts must be required, and it is inconceivable, we reiterate, if not impossible, that a person having a claim of $20,000 should, in filing a sworn statement of that claim in Probate Court, and compiling a declaration in the writ to recover the sum in the Supreme Judicial Court, utterly ignore the real consideration in both instances and then undertake to prove a consideration, nearly all the elements of which, were entirely new, and some of which were flatly contradictory.

While any consideration, however small, may be regarded as sufficient to support a contract, yet the effect of a consideration when proved or admitted, and the effect of the evidence offered to prove it, are entirely different propositions. It is the effect of the evidence which we are treating here.

We feel constrained to say that the conduct of the plaintiff in the method of presenting her case to the court and the manner of attempting to prove it, suggests very strong suspicions of bad faith. Good public policy requires the court to say that, in this class of cases, the contention of any plaintiff must disclose motives of good faith, a claim consistent with the circumstances and probabilities of the situation and supported by clear, positive and convincing proof. The affirmative of none of these requirements appears from the evidence in the present case.

It is therefore the opinion of the court that the plaintiff has failed to sustain her alleged contract for $20,000 and is entitled to judgment for $6,266.17, the amount found by the jury in payment for the time she was unquestionably a servant of the decedent.

We assume that $20,000 of the verdict was upon the alleged contract, as the entire amount or nothing was the only issue, upon this phase of the case.

Our conclusion upon the facts makes it unnecessary to discuss the exceptions.

> *Motion sustained unless the plaintiff files a remititur for all of the verdict above $6,266.17, within thirty days from the date of filing this rescript.*