**ESTATE OF Orrin E. WHITE, Sr.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1986.
Decided March 3, 1987.

Fletcher & Foster, David J. Fletcher (orally), Calais, Talbot & Talbot, William Talbot, Machias, for claimant.

Silsby & Silsby, William S. Silsby, Jr., Raymond Williams (orally), Ellsworth, for respondent.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

Wilbur H. White, the eldest son of Orrin E. White, Sr., and the duly appointed personal representative of his father's estate, appeals from a decision of the Washington County Probate Court. That court held that an ante-mortem oral agreement between the decedent and another son, Orrin E. White, Jr. and his wife Beatrice White was valid and entitled to post-mortem recognition, and awarded $12,500 to the claimants. The personal representative contends that the Probate Court applied an incorrect standard of proof in finding that the evidence supported the existence of an ante-mortem contract, and that, in any event, the Statute of Frauds, 33 M.R.S.A. § 51 (1978), barred recognition of the contract. Because we determine that the evidence supports the court's award on the basis of a contract implied in law, we need not reach the issues raised by the personal representative. We affirm the judgment.

## I.

Orrin E. White, Sr. died on September 3, 1983. He had been married twice, and was survived by three children from each marriage. Orrin E. White, Jr. is one of the surviving children of his father's first marriage. The last will, executed by the decedent five days before his death, was allowed in probate. It revoked a will executed several weeks earlier, which was the third in a succession of prior wills. Only the final will omitted Orrin White, Jr. as a beneficiary.

Orrin White, Jr. and his wife subsequently initiated a claim against his father's estate pursuant to 18–A M.R.S.A. § 3–804 (1981). They contended that in January, 1976 (later changed to December of 1977), the father approached his son and daughter-in-law offering to compensate them if they agreed to perform personal services for him such as preparing his dinners, mending and sewing his clothing, maintaining his car and providing transportation. When the plaintiffs refused to accept any money at that time, the father allegedly proposed to devise property to them consisting of his airplane, one-sixth of his cash and two parcels of land totalling over one hundred acres. The plaintiffs stated that they had agreed to this latter arrangement and had performed their side of the agreement, but did not receive the consideration for their services that had been promised.

After the personal representative denied the existence of a contract and disallowed the claim, the plaintiffs petitioned the Probate Court to resolve the dispute.[1] The court found that Orrin White, Jr. and his wife had in fact furnished valuable services to the decedent, sometimes at hardship to themselves and to their family, that the decedent had intended to compensate them for their services, but had not provided such compensation. The court concluded that although the claimants failed to prove by clear and convincing evidence the existence of a contract to make a will, it nevertheless determined that, in effect, there existed an oral implied-in-fact agreement between the testator and his son and daughter-in-law that was enforceable during Orrin White, Sr.'s lifetime. The court therefore ordered the personal representative to pay the plaintiffs $12,500 as fair and reasonable compensation for the services that they rendered to the decedent. This appeal followed.

## II.

 We have stated that when the trial court's ultimate conclusion is correct in law, it will be sustained on appeal, notwithstanding the fact that the conclusion was reached by an incorrect process of legal reasoning. *Procise v. Electric Mutual Liability Insurance Co.*, 494 A.2d 1375, 1381 (Me.1985); *Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914, 917 (Me.1983). In the case before us, the Probate Court correctly concluded that the claimants failed to establish by the necessary standard of proof an oral promise to devise specific properties.[2] However, the court went on to find that non-gratuitous services were rendered with an expectation of compensation that was not in fact received. On those facts, the court erroneously determined that an agreement implied in fact had been made that was enforceable during the decedent's lifetime. Nevertheless, because the evidence supports a conclusion that a contract implied in law existed, we affirm the judgment.

 Where one party will be unjustly enriched by the receipt of goods or services that are rendered by another with expectations of compensation, the law will imply a promise to pay on the part of the recipient. The breach of a contract implied in law, or "quasi-contract," confers upon the provider of such benefits a cause of action based on equitable principles. The rationale for allowing recovery under the doctrine of unjust enrichment is that it is contrary to equity and good conscience for a party to

---

**1.** The Probate Court had subject matter jurisdiction over this matter pursuant to 18–A M.R.S.A. § 3–105 (1981).

**2.** We therefore do not consider the application of 18–A M.R.S.A. § 2–701 (1981).

retain a benefit received at the expense of the other party. *See, e.g., City of Auburn v. Mandarelli,* 320 A.2d 22, 31–32 (Me. 1974), *appeal dismissed,* 419 U.S. 810, 95 S.Ct. 25, 42 L.Ed.2d 37 (1974); *Pendleton v. Sard,* 297 A.2d 889, 894–895 (Me.1972).

Three elements therefore must be proved in order to establish a claim based on unjust enrichment:

 1. A benefit conferred upon the defendant by the plaintiff;

 2. An appreciation or knowledge by the defendant of the benefit; and

 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

12 Williston, *Contracts* § 1479 at 276 (3d ed. 1970) (footnote omitted). Underlying this obligation is the longstanding equitable principle that

> when valuable services are rendered by one person at the request, or with the knowledge and consent of another, under circumstances not inconsistent with the relation of debtor and creditor between the parties, a promise to pay is ordinarily said to be implied by law on the part of him who knowingly receives the benefit of them, and is enforced on grounds of justice in order to compel the performance of a legal and moral duty.

*Saunders v. Saunders,* 90 Me. 284, 289, 38 A. 172, 173 (1897); *see also Bourisk v. Amalfitano,* 379 A.2d 149, 151 (Me.1977); *Stinson v. Bridges,* 152 Me. 306, 310, 129 A.2d 203, 206 (1957); *Colvin v. Barrett,* 151 Me. 344, 350, 118 A.2d 775, 777 (1955); *Hatch v. Dutch,* 113 Me. 405, 408, 94 A. 487, 489 (1915); *Leighton v. Nash,* 111 Me. 525, 528, 90 A. 385, 386 (1914).

■ In the case before us, all of the requirements necessary to establish a claim for compensation have been met. The Probate Court found that a benefit was in fact conferred upon the decedent during his lifetime in the form of "valuable services ... at a time when he needed and desired them," "sometimes [provided by claimants] at hardship to them and their family." The decedent intended to compensate the claim-ants "in kind or otherwise," although he "was not specific as to how [the compensation] was to be accomplished or provided." Although the court found the facts to be in dispute, it concluded that, taken in its entirety, the testimony established an expectation on the part of the claimants to receive compensation for their services and the concurrent intention on the part of the decedent to compensate them. In these circumstances, a retention of the benefits conferred upon the decedent in the form of services would result in the estate's unjust enrichment. Implicit in the court's conclusion is a finding that the claimants did not intend, nor did the decedent expect them, to render their services gratuitously. The Probate Court's factual findings will not be set aside as clearly erroneous since there is competent evidence in the record to support them. *Harmon v. Emerson,* 425 A.2d 978, 981–982 (Me.1981).

■ Moreover, the fact that the decedent was the father of one of the claimants does not raise a presumption that the services were rendered gratuitously. Whether services are rendered gratuitously is an issue of fact for the fact finder to resolve. We have said that

> [t]here is not in any given case a legal presumption that services are rendered either gratuitously or for compensation. The issue is one of fact, whether under the circumstances of the particular case the services were rendered on the basis of contractual relation, either express or implied.

*Stinson v. Bridges,* 152 Me. at 311–312, 129 A.2d at 206, quoting *Colvin v. Barrett,* 151 Me. at 352, 118 A.2d at 780; *see also Saunders v. Saunders,* 90 Me. at 290, 38 A. at 173 ("If it can properly be said that there is any presumption in a given case that the services rendered to a father by a son after he becomes of age, are gratuitous, it is clearly a presumption of fact and not of law.") The Probate Court's implicit finding that the services were not rendered gratuitously is a determination that any presumption of gift that may have arisen as a result of the filial relationship has been effectively rebutted.

Finally, the Probate Court found *quantum meruit* to be the proper measure of recovery. On that basis, the claimants are entitled to the reasonable value of services rendered to the decedent during the final years of his life. These services encompass both those of a routine and ordinary nature, requiring no evidence as to their value, and those social and domestic services that have no fixed value in the marketplace and cannot be measured by ordinary monetary standards. *See Hastoupis v. Gargas*, 9 Mass.App. 27, 398 N.E.2d 745, 751 (1980); 3 Williston, *Contracts* § 536 (3d ed. 1960). Considering the nature and extent of the services the Probate Court found to have been rendered, including the "providing of meals, ... repairs to decedent's vehicle, care of decedent's clothing, general supervision of decedent's medication with food being consistent to his diet, plus other incidental services," the court's determination of the fair and reasonable value of their services to the decedent cannot be deemed erroneous.[3]

Accordingly, because the ultimate conclusion reached by the Probate Court is supported by the evidence, we affirm the judgment.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Although damages for unjust enrichment must be based on the extent to which the recipient has been enriched, the distinction between that measure of damages and the quantum meruit standard of reasonable value of the services used by the Probate Court does not affect the result here since reasonable value in this case is the virtual equivalent of Orrin E. White, Sr.'s enrichment.