**ESTATE OF Earl BOOTHBY.**

Supreme Judicial Court of Maine.

Argued Sept. 14, 1987.
Decided Oct. 27, 1987.

R. Michael Martin (orally), Hobbins & Martin, Saco, for plaintiff.

Thomas E. Humphrey (orally), Roberts, Shirley & Humphrey, Springvale, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Beulah Towne appeals an order of the York County Probate Court denying her claim against the estate of her uncle Earl Boothby. Mrs. Towne claims that the estate owes her $100,000 for services she rendered to Mr. Boothby between August 1972 and December 1982. We find no reversible error in the Probate Court's denial of her claim.

In July 1972 Mr. Boothby, a resident of Limerick, was ready to be discharged from the Veteran's Administration Hospital in Togus. Because of his physical ailments as well as his wife's recent death, he asked his

niece, Mrs. Towne, if she would return to Limerick to care for him. Mrs. Towne, then 65 years old, was working as a registered nurse in Framingham, Massachusetts, although she also owned a home in Limerick. The testimony was ambiguous about promises Mr. Boothby made when he asked Mrs. Towne for help. In any event, however, as a result of his request Mrs. Towne moved to Limerick and from August 13, 1972, until December 10, 1982, provided Mr. Boothby with unceasing assistance in often difficult circumstances. After ten years Mrs. Towne stopped caring for Mr. Boothby only because of her own deteriorating health. Her assistance, provided in Mr. Boothby's home during warmer months and in hers during the colder periods of the year, ranged from basic nursing care and housekeeping to such tasks, physically arduous for an older woman, as chopping wood and carrying water from a well. During the ten-year period Mr. Boothby provided little financial help to cover household expenses, giving Mrs. Towne only about $20 a week toward grocery expenses and at one point paying for a new furnace in her home.[1] According to the testimony, however, he stated a number of times since 1972 that he would remember Mrs. Towne in his will, sometimes referring to various amounts up to $100,000.

Mr. Boothby died on June 10, 1985, and in his will he gave Mrs. Towne for her life 50% of the income from a testamentary trust containing all the proceeds of his estate. The will guaranteed her not less than $500 a month, authorizing invasion of the principal to the extent half of the trust income was deficient. Mrs. Towne has filed a claim against Mr. Boothby's estate asserting a breach of a contract, either express or implied in fact, entered into by Mr. Boothby to bequeath her $100,000. In the alternative, she seeks to recover the value of the services she rendered to Mr. Boothby on what she calls a "quantum meruit theory" and what we interpret to be a theory of contract implied in law or quasi-contract.

### I. No Express or Implied-in-Fact Contract to Make a Bequest

Mrs. Towne argues that she and Mr. Boothby entered into either an express or an implied-in-fact contract under which she would render home and health care to Mr. Boothby and he would leave $100,000 to her in his will.[2] The Probate Court in its findings of fact and conclusions of law saw "no credible evidence to support an express contract" between Mrs. Towne and Mr. Boothby. The court also held that even if the parties had entered an implied-in-fact contract, Mrs. Towne was unable to establish a breach of that contract "[s]ince the amount to be left by Will was never identified" and Mrs. Towne was in any event a significant beneficiary under Mr. Boothby's will.

■ A person seeking to establish an oral agreement to make a bequest must present the court with "clear and cogent proof" of the terms of the asserted agreement. In the comparable situation of a claimed debt of an estate based upon an oral antemortem agreement, we have explained that the heightened standard of required proof protects against fraudulent claims against an estate after one of the parties to the agreement is dead and unable to refute the claim. In *Weed v. Clark*, 118 Me. 466, 109 A. 8 (1920), we explained:

> One who withholds his demand while an alleged debtor is alive, and in after-time seeks to compel payment by the latter's estate, has no right to expect that such claim will escape close scrutiny or be enforced in the absence of evidence pre-

1. Mr. Boothby in October 1972 gave Mrs. Towne a $10,000 signed demand note, which she has never submitted for payment. When he gave it to her he stated, "You wonder if anything happened if you're going to get anything. Just to make sure you will have this at least to fall back on."

2. Since the personal representative has not argued that Mrs. Towne's claim is barred by either the Statute of Frauds, 33 M.R.S.A. § 51(7) (1978), or the provision of the Probate Code that requires a contract to make a will to be in writing, 18–A M.R.S.A. § 2–701 (1981), we do not consider whether either statute furnishes an alternative justification for the Probate Court's rejection of her claim.

ponderantly amounting to clear and cogent proof. *Id.* at 469, 109 A. at 9 (demand against estate for wages and money lent before testator's death). *See also Liberty v. Haines,* 103 Me. 182, 192–93, 68 A. 738, 742–43 (1907) (clear and convincing proof required "to establish an ante mortem contract that results in a post mortem disposition of an estate"). On appeal we review the Probate Court's denial of Mrs. Towne's claim only for clear error, and will affirm if there is any competent evidence to support the court's conclusions. *Harmon v. Emerson,* 425 A.2d 978, 981–82 (Me.1981).

A contract in fact, whether express or implied, requires "a meeting of the minds of the parties to the contract, i.e., a mutual assent to be bound by its terms, and that mutual assent of the parties to the terms agreed upon must be reflected and manifested in the contract, either expressly or impliedly." *Zamore v. Whitten,* 395 A.2d 435, 440 (Me.1978). When the agreement has not been expressly made but is instead implied in the circumstances surrounding the parties' relationship, the claimant must show that those surrounding circumstances "make it reasonable for him to believe that he will receive payment" for services he has rendered to the other party. *Bourisk v. Amalfitano,* 379 A.2d 149, 151 (Me.1977) (quoting *Morrill v. United States,* 228 F.Supp. 734, 737 (D.Me.1964)).

■ The record contains testimony from which the Probate Court could conclude that Mrs. Towne did not return to Maine to care for Mr. Boothby because of an express agreement between them that he would leave $100,000 to her in his will. When asked at the hearing why she provided Mr. Boothby with the nursing and home care, she stated:

> Well, the reason I did was because he was an ill man and his wife had died and I—I am a human being and so is he. We have family ties and a relationship, and I felt that—that I was duty bound as a family member if I was physically able to do it.

She testified to the love she felt for her uncle and to the close relationship they had

when she was a child. Certainly Mrs. Towne hoped to receive a significant bequest in Mr. Boothby's will, and there was testimony that Mr. Boothby had said she would be well remembered. As Mrs. Towne explained, however, the statements Mr. Boothby made about his will were "very, very vague" and he often gave things away that he later took back. In the face of that testimony we as an appellate court can find no clear error in the Probate Court's finding that Mrs. Towne did not move to Maine to perform the services for Mr. Boothby on any express agreement that she would care for him in return for a bequest of $100,000.

■ In addition, that testimony supports the Probate Court's conclusion that even if an implied-in-fact contract to make a bequest arose out of Mr. Boothby's and Mrs. Towne's relationship, the terms of that agreement were so vague as to make it impossible to find Mr. Boothby in breach. Beyond Mrs. Towne's description of the bequest promised by Mr. Boothby as "very, very vague," there was testimony that the promised figure was $100,000, "as much as $100,000," and also just a "substantial sum." Against the vagueness in the identification of the amount Mr. Boothby allegedly promised to leave Mrs. Towne, he did in fact leave her half of the income from his entire estate, guaranteed to be at least $500 per month. Having failed to persuade the Probate Court of a definite amount that Mr. Boothby promised to leave her, Mrs. Towne failed to prove to the court's satisfaction that the not insignificant sum she in fact received was less than the amount Mr. Boothby promised.

The Probate Court was thus justified in concluding that Mrs. Towne had failed to carry her burden of establishing her claim on the basis of either an express or an implied-in-fact contract.

## II. *No Quasi–Contract*

From the start Mrs. Towne has based her claim for $100,000 against the Boothby estate upon "a quantum meruit theory," as well as on an alleged contract in fact between her and Mr. Boothby. Her "quantum meruit theory" is an assertion that she is entitled to recover on the alternative

ground that "[w]here one party will be unjustly enriched by the receipt of goods or services that are rendered by another with expectations of compensation, the law will imply a promise to pay on the part of the recipient." *Estate of White*, 521 A.2d 1180, 1182 (Me.1987) (allowing recovery on contract implied in law or "quasi-contract" by son and daughter-in-law seeking compensation from his father's estate for services rendered during latter's lifetime). Recovery on such a contract implied in law (or "quasi-contract") rests upon the doctrine of unjust enrichment, which declares that "it is contrary to equity and good conscience for a party to retain a benefit received at the expense of the other party" *Id.* at 1182–83.

In denying her claim for $100,000 the Probate Court did not explicitly address Mrs. Towne's quantum meruit theory and therefore did not make express findings of fact relevant to that theory. Nonetheless, "[w]hen no findings of fact are made, it is assumed on appeal that the trial court found for the prevailing party on all factual issues necessarily involved in the decision and such assumed findings will not be set aside unless clearly erroneous." *Blackmer v. Williams*, 437 A.2d 858, 861 (Me. 1981) (citing *Harmon v. Emerson*, 425 A.2d at 981). We therefore must assume that the Probate Court, in rejecting Mrs. Towne's quantum meruit or quasi-contract theory of recovery, found that she had not successfully carried her burden of proving all factual elements required for the application of that theory.

■ To recover on quasi-contract, Mrs. Towne had the burden of proving three elements:

1. A benefit conferred upon [Mr. Boothby] by [her];
2. An appreciation or knowledge by [Mr. Boothby] of the benefit; and
3. The acceptance or retention by [Mr. Boothby] of the benefit under such circumstances as to make it inequitable for [him] to retain the benefit without payment of its value.

*Estate of White*, 521 A.2d at 1183 (quoting 12 Williston, *Contracts* § 1479, at 276 (3d ed. 1970)). *See also Thurston v. Nutter*,

125 Me. 411, 418, 134 A. 506, 509 (1926). The Probate Court recognized the satisfaction of the first two elements of Mrs. Towne's required proof, but implicit in the court's denial of Mrs. Towne's claim is a finding adverse to her on the third element. The Probate Court implicitly found that she had failed to carry her burden of proving that she had not rendered her services to her uncle gratuitously; that she had failed to establish that it would be "inequitable for [Mr. Boothby] to retain the benefit without payment of its value." *Estate of White*, 521 A.2d at 1183. Reviewing that implicit finding only for clear error, as an appellate court must, we find no basis for disturbing the Probate Court's denial of Mrs. Towne's claim. We could sustain her appeal only if the record evidence compelled the trial judge to find for her on the factual issue on which she had the burden of proof. *See Harmon v. Emerson*, 425 A.2d at 982. The evidence heard by the probate judge, including Mrs. Towne's own testimony, did not exert any such compulsion upon him as the factfinder.

■ Undeniably Mrs. Towne provided a great service to her uncle during his years of need. The testimony, however, supports the Probate Court's implicit finding that Mrs. Towne provided that service not in expectation of future compensation but because she felt "duty bound as a family member" to assist him. Her hopes, fulfilled in a substantial way, that she would be well remembered in Mr. Boothby's will in no way alter our understanding of the generous motive prompting her hard work for over ten years. Gratuitous efforts, however great and however commendable, cannot support a quasi-contract claim. *See Thurston v. Nutter*, 125 Me. at 418, 134 A. at 509. *Cf. Estate of White*, 521 A.2d at 1183 (in allowing quasi-contract claim, Probate Court made finding that services were not rendered gratuitously).

The entry is:

Judgment affirmed.

All concurring.