ALTHEA M. GORDON *vs.* ALTON A. KEENE, Admr.

Androscoggin.   Opinion October 7, 1919.

*General rule in regard to proof necessary in actions to recover for services rendered.*

In actions to recover for services rendered it is incumbent on the plaintiff to prove that the services were rendered by the plaintiff either in pursuance of a mutual understanding between the parties that she was to receive payment, or in the expectation and belief that she was to receive payment and that the circumstances of the case and the conduct of the defendant's intestate justified such expectation and belief.   It is not enough to show that valuable service was rendered.   It must be shown also that the plaintiff expected to receive compensation and that the defendant's intestate so understood, by reason of a mutual understanding or otherwise, or that under the circumstances he ought so to have understood.   Both propositions are essential and must be proved.

Action of assumpsit to recover for services alleged to have been rendered defendant's intestate, and also to recover certain money claimed as due to plaintiff on account of a certain note and also to recover for certain money alleged to have been loaned to said defendant's intestate by plaintiff.   Defendant filed plea of general issue. Verdict for plaintiff in the sum of $1836.33.   Defendant filed motion for new trial, also exceptions to certain rulings of presiding Justice.

Judgment in accordance with opinion.

Case stated in opinion.

*Harry Manser,* for plaintiff.

*Frederick R. Dyer,* for defendant.

SITTING:   CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

MORRILL, J.   In his lifetime Benjamin C. Keene was a prosperous farmer residing in Hebron, Oxford County; he was a large owner of farm lands and an extensive apple grower.   In March, 1904 he obtained a divorce from his wife; his married daughter acted as his housekeeper for a few months thereafter.   The plaintiff had been

acquainted with Mr. Keene for a number of years; for about four years before going to Hebron she kept a boarding house on Sabattus Street in Lewiston, where Mr. Keene frequently called to sell vegetables and other farm produce; sometimes he took lunch there and his horse was stabled and fed there; on June 25, 1904 the plaintiff went to Mr. Keene's house and lived there from that time until his death, acting during the whole period as his housekeeper. Other help was hired from time to time to assist in the household, especially during the latter years of Mr. Keene's life, and was paid by him. Mr. Keene died October 13, 1917. Shortly after the funeral the plaintiff sold thirteen head of cattle out of the twenty-five head of cattle on the place, receiving the proceeds thereof, and moved away taking with her substantially all the furniture, claiming that as her own.

On August 21, 1918 she brought this action to recover the sum of $2190 for her services during six years prior to Mr. Keene's death, being at the rate of one dollar per day; the declaration contains two other counts, one to recover $260.50 for money loaned, another upon a note for $65 dated December 7, 1916; liability on the note is conceded. The plaintiff has a verdict for $1836.33. The case is before us upon a motion for a new trial in the usual form and upon exceptions to certain rulings of the Justice of the Superior Court.

We will first consider the motion. The record does not disclose convincing evidence of an express contract by the deceased to pay the plaintiff one dollar per day, or any stipulated sum, for her services at Mr. Keene's house. Judging by the amount of the verdict, the jury must have so found. The conversations between the plaintiff and Mr. Keene related by Mrs. Aubin, a sister of the plaintiff, which constitute the only evidence of an express contract, fail to show any completed contract; they show proposals made by Mr. Keene, not accepted by the plaintiff; the final arrangement between the parties is not disclosed.

It was therefore "incumbent on the plaintiff to prove that the services were rendered by the plaintiff either in pursuance of a mutual understanding between the parties that she was to receive payment, or in the expectation and belief that she was to receive payment and that the circumstances of the case and the conduct of the defendant's intestate justified such expectation and belief. It is not enough to show that valuable service was rendered. It must be shown also

that the plaintiff expected to receive compensation and that the defendant's intestate so understood, by reason of a mutual understanding or otherwise, or that under the circumstances he ought so to have understood. Both propositions are essential and must be proved." *Leighton* v. *Nash*, 111 Maine, 525, 528.

It clearly appears, and in fact is undisputed, that beginning about two years after going to Hebron, the plaintiff engaged in poultry raising on a large scale; that she had the assistance of Mr. Keene's hired man to do the rough work; that she regularly devoted a portion of her time each day to caring for her hens and chickens; that she had the entire proceeds of this industry.

Two witnesses, apparently disinterested, testify to conversations with the plaintiff at different times in which she said in substance that she was to have what her hens brought her in to pay for her work in the house; another witness, likewise apparently disinterested, testified to a statement made by Mr. Keene in Mrs. Gordon's presence to the effect that he had writings to show that she was to work there without wages for a chance to keep her hens; to this statement when made by Mr. Keene, she made no reply, according to the witness. This testimony impresses us very strongly in favor of the defendant's contention; the witnesses, so far as we can discover, had no motive or opportunity to frame their testimony in corroboration of each other. Yet the jury saw and heard the witnesses and had better opportunity than we have to judge of the weight to be given to their testimony; and we might hesitate to disturb the verdict, had not the plaintiff furnished convincing evidence in corroboration.

It appears that the plaintiff kept a book showing her transactions in poultry raising. This book was put in evidence; it begins January 2, 1911; the last entries are October 1, 1917. The book is kept month by month; on the right hand page in Mrs. Gordon's handwriting the receipts are entered; on the left hand page, usually in Mr. Keene's handwriting, are the charges for grain and feed furnished by Mr. Keene, items of other expense and sometimes checks given by Mr. Keene to her for use in paying her bills. That these accounts were invariably settled every month is conceded, Mrs. Gordon paying Mr. Keene for his charges against her during the month. So unfailing was this course of business that on October 2, 1917, eleven days before he died, Mr. Keene, unable to be fully dressed, sat up at the table and settled the September account and receipted it upon the book.

But this is not all; one hundred and sixty-four checks drawn by Mr. Keene in favor of Mrs. Gordon are produced; the first is for $375, dated November 1, 1911; the last is for $7.44, dated September 24, 1917. Mrs. Gordon denies that any of these checks represent money paid for services, or as gifts. She says that certain of these, for example, thirteen checks which bear the endorsement of A. W. Harvey were given for waste purchased of Mr. Harvey, a fish dealer in Lewiston, for her hens, and were charged in the book with the grain and included in the monthly settlements. We find the thirteen checks so identified by her entered upon the book; we also find twelve other checks endorsed by A. W. Harvey which we have been unable to identify with entries on the book. Two checks endorsed by Fred Hodgdon and one check endorsed by Ray Hodgdon were for eggs received from them and are charged on the book; the check of September 29, 1916, endorsed by A. M. Fogg and the check of January 9, 1917, endorsed by H. E. Eastman relate to similar transactions, and are charged on the book; we find six other checks endorsed by A. M. Fogg which we have been unable to identify with entries on the book. The check of February 13, 1914 to Hester R. Oldham was to pay car fare of Mrs. Gordon's sister who was coming to help in the house; it is charged in the book. In March, 1914 we find a check to A. G. Atkinson charged, evidently the check of March 9, 1914; we find three other checks endorsed by A. G. Atkinson which we have been unable to identify with entries on the book. It must be remembered that all these checks were drawn payable to Mrs. Gordon and by her endorsed. There are other charges of checks on the book which we have been unable to identify with checks produced. In all we are able to identify forty-five checks charged to the plaintiff.

Another class of checks is more significant; a check for $9.62 dated June 12, 1912 endorsed to A. N. Despins Company appears, as to which Mrs. Gordon says:

"Q. I call your attention to two checks, one dated June 12, 1912, endorsed by yourself and A. N. Despins Co. Can you explain that?

A. Well, Mr. Despins' checks were for boots for Mr. Keene and myself.

Q. And did that represent money which Mr. Keene paid you?

A. Yes, he gave me checks to get boots at different times for himself and my own boots I paid for."

We do not find any charge corresponding to this check, nor to a previous check dated November 1, 1911, for $10.90 also endorsed to A. N. Despins Company; but under date of December 6, 1912 is a charge "Cash—Boots $3.50," and a check appears of that date and amount endorsed to A. N. Despins Company; and under date of February 8, 1917, is a charge of "check to A. N. Despin $2.25" and a corresponding check is found; this, Mrs. Gordon says, was for a pair of slippers for herself. A check for $5 dated November 10, 1913, collected through the Livermore Falls Trust & Banking Company, is explained as follows: "That was for our fare, Mr. Keene and I visited my nephew at Livermore Falls, and that was for our fares and my hat that I got there at that time." We find the charge on the book, "Livermore Falls, check, hat       $2.75
fare       1.40"
And similar charges are found under dates of October 7, 1913, "Due on check trip to Portland $5.08," and December 18, 1913, "Trip to Town $10.00."

A check for $2 dated April 30, 1914, endorsed by W. H. Berry, and another for $5 dated May 1, 1914 endorsed by E. M. Swift and W. H. Berry are produced; the latter was Mrs. Gordon's contribution to the church, the former her contribution towards a church organ; both are charged to her in her own handwriting.

Is it probable that if Mr. Keene was owing Mrs. Gordon for services, she would have included in her accounts not only charges for poultry feed and eggs, but also charges for checks furnished for her clothing, church contributions, and vacation expenses, and would have paid such charges to Mr. Keene month after month during the whole six years? That she did make these monthly settlements and pay him is the positive testimony of the plaintiff and her sister Mrs. Aubin. Such a course of dealing is not consistent with the ordinary conduct of persons standing in the continuing relation of debtor and creditor.

Without further extending this opinion it is sufficient to say that after a careful examination of the whole record the court is of the opinion that the verdict upon the first count is unmistakably wrong; that the monthly settlements embraced all outstanding claims between the parties except when evidenced by notes or other writings; that the plaintiff did not expect to receive, nor defendant's intestate to pay further compensation; the jury must have failed to apply the rules of law to the undisputed facts of the case.

In support of the second count the plaintiff introduced a check payable to her for $260.50 dated November 4, 1913 signed by Mr. Keene, which Mrs. Gordon said was not presented for payment either before or after his death; but in this she was mistaken. The bank clerk testified that she did present it for payment after Mr. Keene's death, and payment was refused for that reason. Without further evidence this check would not support a claim for money loaned. But Mrs. Gordon testified on cross examination and on redirect examination that this check was given to her for money borrowed for apple picking. She added, "Well, he said that I might get it cashed when he had money in the bank to pay." Although her delay in presenting the check is not satisfactorily explained, as Mr. Keene had nearly $1300 on deposit when the check was given and not less than $589 at any time during that month of November, yet we must consider that the jury had opportunity to see the woman, to judge of the weight of her testimony. If they believed her statement they were justified in awarding her the amount of the check; there was no evidence to the contrary. The declaration does not contain a count upon the check; but taking a check for an existing debt is not, ipso facto, payment of the debt, and an action may be maintained for recovery of the original debt. *Marrett* v. *Brackett*, 60 Maine, 524.

The defendant has four exceptions to rulings of the presiding Justice admitting answers given by the plaintiff to questions propounded by her counsel. It appears that the defendant testified in his own behalf to certain facts happening before Mr. Keene's death, admissible upon the rules of evidence; he was then cross examined; the cross examination was not confined to the facts as to which he had testified on direct examination, but took a wider range; but no exceptions were taken to this method of cross examination. The plaintiff was called in rebuttal and asked the questions upon which the exceptions are based. Without expressing an opinion upon the questions of law propounded by defendant's counsel, we think that the questions and answers were not prejudicial to the excepting party. How was it material to the issue, whether or not Mrs. Gordon had any experience in raising hens in 1904, or had kept a boarding house prior to going to Mr. Keene's, (a fact which had already appeared), or how many calves she raised while at Mr. Keene's, or whether she furnished eggs for the cooking and table? In their zeal to leave no facts unpresented the counsel, as frequently happens, seem to have drifted away from

the main issue.   If exceptions had been presented to the method of cross examination adopted with defendant, an important question would have been presented.

An exception to the refusal to give a requested instruction is presented.   The requested instruction seems to have been taken verbatim from the opinion in *Spring* v. *Hulett,* 104 Mass., 592, withdrawn from the context.   The jury had been fully instructed as to the law of implied contracts; we think that the requested instruction was properly refused.   *Lunge* v. *Abbott,* 114 Maine, 177, 182.

> *Exceptions overruled.*
>
> *Motion sustained and new trial granted, unless within twenty days after this rescript is received by the clerk in Androscoggin County, plaintiff formally remits all of the verdict above the amount due on the note dated December 7, 1916, and the amount of the check for $260.50 with interest on the latter from date of writ; in which case judgment shall be entered accordingly.*