FLORA E. LEIGHTON *vs.* FANNIE P. NASH, Exrx.

Cumberland. Opinion April 28, 1914.

*Assumpsit. Contract. Gratuitous Services. Implied Contract. Legal Obligation.. Services. Will.*

1. To recover upon an implied promise to pay for services, it must appear that the services were rendered by the plaintiff, either in pursuance of a mutual understanding between the parties that the services were to be paid for, or in the expectation and belief on the part of the plaintiff that payment was to be made, and that the circumstances of the case and the conduct of the defendant justified such expectation and belief.

2. The evidence does not warrant the inference that the plaintiff expected pay for the services rendered to her mother, nor that the defendant understood or ought to have understood that she so expected.

On motion by defendant for a new trial. Motion sustained. Verdict set aside.

This is an action of assumpsit upon an account annexed to the writ, brought by Flora E. Leighton against Fannie P. Nash, as the executrix of the last will and testament of William H. Pearson, late of Skowhegan, in the County of Somerset, to recover the sum of six hundred and ninety dollars and seventy-five cents, for services in caring for and nursing Mr. and Mrs. Pearson when sick, general housework and various other kinds of labor, between 1904 and 1910. The defendant pleaded the general issue. The jury returned a verdict for the plaintiff for $725.71, and the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*Foster & Foster, William Lyons, and John B. Thomes,* for plaintiff.

*Merrill & Merrill,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ. SPEAR, J., did not concur.

SAVAGE, C. J. The plaintiff brings this action against the estate of her stepfather, William H. Pearson, to recover for services rendered and cash paid in his lifetime, and alleged to have been at his request. There are some small items for services rendered to Mr. Pearson personally both before and after the death of Mrs. Pearson, the plaintiff's mother. But the main item, and the one to which attention must be particularly directed, is for "work and labor caring for Mr. Pearson and wife, and for labor performed at Mr. Pearson's request in general work and general care and nursing Mr. and Mrs. Pearson when they were sick, and also in taking care of their hired girl, Hannah Johnson, during her sickness, all at the request of Mr. Pearson, from October 10, 1904 to October 10, 1910, $600.00."

It appears that more than twenty years ago Mr. Pearson built a two tenement house. And from the time it was built until the death of Mrs. Pearson in 1910, Mr. and Mrs. Pearson occupied the downstairs tenement, and the plaintiff and her husband the upper one, the husband regularly paying rent each month.

It is not disputed that during the period covered by the item in question the plaintiff performed many valuable services in caring for and nursing her mother, and perhaps rendered some service to Mr. Pearson personally. The controversy, however, hinges chiefly on the service to the mother. And the question at issue is whether the service was gratuitous, or rendered under an implied contract. Express contract there was none.

In 1904, Mr. and Mrs. Pearson were each about seventy years of age. Mrs. Pearson was then feeble and continued to grow feebler, though she continued to labor more or less up to the time of her last illness, a few days before her death. But she had a "heart trouble" and a "nervous trouble" and perhaps other complications. She frequently had "sick spells," when care and nursing were necessary. At such times no outside nurse was employed, but when necessary the plaintiff came down from her tenement upstairs and cared for and nursed her mother, rubbed and bathed her, gave her medicine and food, and in every needful way ministered to her. At times when her services were needed, Mr. Pearson sometimes would call to her from the foot of the stairs, and sometimes would attract her attention by rapping on the connecting pipes. It also appears that there were times when the plaintiff brought down cooked food for Mr. and Mrs. Pearson, and performed some housewifely service about the house, like cleaning, sweeping, dusting, and cooking. This, we assume, was when her mother was temporarily incapcitated. The two families seem to have maintained the most amicable relations. It further appears that during her last illness, in the last week of her life, Mrs. Pearson, at two different times, asked her husband to "give," or "leave," the house where they lived to "Flora," the plaintiff, and that he replied "I will do what is right." One witness, after giving the statement in that form, was recalled later in the trial, and testified that at one of the times he replied, "I will do as you want me to." The case does not show that the plaintiff had any knowledge of these conversations, until after her mother's death. Three years before, Mr. Pearson had made a will in which he gave the plaintiff five hundred dollars in case she survived her mother. That will was in existence at the time of these conversations, and after his death was probated. The foregoing statement embraces all of the essential facts. The jury found for

the plaintiff, and the case comes up on the defendant's motion for a new trial.

There having been no express agreement to pay, it was incumbent on the plaintiff to prove that the services were rendered by the plaintiff either in pursuance of a mutual understanding between the parties that she was to receive payment, or in the expectation and belief that she was to receive payment and that the circumstances of the case and the conduct of the defendant justified such expectation and belief. *Saunders* v. *Saunders,* 90 Maine, 284. It is not enough to show that valuable service was rendered. It must be shown also that the plaintiff expected to receive compensation, and that the defendant's intestate so understood, by reason of a mutual understanding or otherwise, or that under the circumstances he ought so to have understood. Both propositions are essential and must be proved. This is the law of implied contracts. Whether the plaintiff expected compensation, and whether the defendant's intestate so understood, or ought so to have understood, are questions of fact, and must be determined in a case like this, where there is no testimony from either of the parties, by a consideration of the circumstances, of their relations to each other, of their conduct respectively, and of the probabilities.

We think the case is barren of evidence to warrant the inference that when the plaintiff rendered these loving and filial services to her mother she expected to be paid for it,—that she was doing the services for pay,—that she was thereby making Mr. Pearson her debtor. It may very well be believed that she hoped that her stepfather would recognize her service in some way, as by legacy, which indeed he did. But that she regarded him as her debtor is wholly improbable under the evidence. To say so would be mere guesswork. The probabilities are all the other way. And there is no evidence which warrants the inference that Mr. Pearson understood or ought to have understood that he was becoming indebted to the plaintiff every time he called the plaintiff down stairs to minister to her mother. Not once during the six years it is shown that there was any conversation between the parties indicating that either of them understood that the service was rendered on a commercial basis. The subject is not shown ever to have been referred to by either. And during all the time, the plaintiff's husband was

regularly paying rent for the tenement they occupied, month after month. If the plaintiff then expected to be paid for her services, it would seem likely that she would have attempted to have her claim used in diminution of rent, although the rent was for her husband to pay, and not for her, unless she wished to conceal her expectation from Mr. Pearson, and make claim for compensation only after his death, when he could no longer dispute it. Such an assumption would not be creditable to the plaintiff, nor helpful.

The plaintiff places much reliance upon the fact that when Mrs. Pearson asked her husband to give or leave the house to the plaintiff, he replied that he would do what was right, or that he would do as she wished, as one witness puts it. But this statement was not made to the plaintiff, nor in her presence. It does not appear to have come to her knowledge at the time, and no service was rendered in reliance upon it. And we may add that such a statement made to a dying wife cannot fairly be regarded as an acknowledgement of a legal obligation to the plaintiff. So to hold would do violence to human experience. It may be that he recognized a moral obligation, and it may be regarded as quite certain that he did not wish to disappoint the expectations of his aged and beloved wife, so soon to breathe her last. Weighed in the light of these circumstances, this evidence lends no probability to the plaintiff's contention.

As to the other items in the plaintiff's writ, it is only necessary to say that we think they fall within the principles already stated. The evidence entirely fails to show that the services were rendered in expectation of payment. They appear to have been gratuitous.

It is quite manifest that the jury mistook the principles of law laid down for their guidance. They failed to distinguish, it may be, between moral obligation and legal obligation. There is no evidence to sustain their inference that Mr. Pearson became the plaintiff's debtor. The verdict is unmistakably wrong.

> *Motion sustained.*
> *Verdict set aside.*