ADDIE F. BRYANT *vs.* SANFORD L. FOGG, Adm'r.

Somerset.   Opinion September 24, 1926.

*For a relative or member of the household to recover payment for services there must be a contract, either express or implied as a matter not of law but of fact, and such contract must be proved in accordance with the ordinary rule of burden of proof.*

*It is not enough to show that the valuable service was rendered.   It must appear that the one who rendered service expected at the time the services were performed compensation and the one who received so understood or under the circumstances ought so to have understood and by his words or conduct or both justified the expectation.*

*There is not in any given case a legal presumption of any kind that the services were rendered gratuitously or for compensation.*

When the parties bear the relationship to each other as in this case the determination whether upon the circumstances existing in each case the services were rendered on the basis of contract or not is declared by our court to be "peculiarly the province of the jury."

The jury concluded there was a mutual understanding for compensation and the court cannot say that as a matter of law there was no evidence from which such understanding could not be inferred or that the jury's verdict was due to bias or prejudice or was manifestly wrong.

On general motion for new trial.   An action by a daughter against the estate of her father for housekeeping and care.   A verdict of

$978 was rendered for plaintiff and defendant filed a general motion
for a new trial.    Motion overruled.

The case is sufficiently stated in the opinion.

*H. R. Coolidge,* for plaintiff.

*McLean, Fogg & Southard,* for defendant.

WILSON, C. J., PHILBROOK, STURGIS, BASSETT, JJ.
MORRILL, A. R. J.

BASSETT, J.    Suit brought by Addie F. Bryant against the adminis-
trator c. t. a. of the estate of her father, Cyrus W. Foster.    One part of
the claim filed in the Probate Court and set forth in the writ, which
was dated August 26, 1924, was for housekeeping and care of the
father from April 1, 1915, to May 22, 1922, three hundred and seventy-
one weeks at $6 per week, $2226;   the other part was for groceries
and provisions furnished the father from April 1, 1915, to May 8, 1921,
three hundred and seventeen weeks at $5 per week $1585.    The only
question submitted to the jury was the recovery for housekeeping and
care for six years prior to the date of the writ, viz.:   from August 27,
1918, when the statute of limitations began to operate, to May 22,
1922, one hundred and ninety-four weeks.    The verdict was for the
plaintiff $978.    The case comes up on general motion.

Cyrus W. Foster, a civil war veteran eighty years old was in April,
1915, living on his farm in Palmyra.    His wife was very ill.    They
had two children, a son Frank P. Foster who also lived in Palmyra
at some distance from his father and a daughter, the plaintiff, who
lived in her home in Pittsfield village.    The son at his father's
request went for and brought back his sister to the farm.    She came
April 1.    The mother died on April 17.    The plaintiff remained
continuously at her father's home until he was taken to the National
Home at Togus on May 22, 1922, by the son, who had been appointed
his guardian.    He remained there until his death February 25, 1923.
The plaintiff while in her father's home did all the house work being
the only woman there.    The father was occasionally attended by a
physician until October, 1921 when from the infirmities of age and a
complication of physical ailments he required frequent and regular
medical treatment.    In August, 1918 a man was employed to run
the farm and did so, constituting one of the family, until the father
left.    On October 8, 1921, a male trained nurse was employed to take

care of Mr. Foster and remained until March 4, 1922. It was not controverted that the plaintiff did all the household duties and that, when Mr. Foster had sick spells, washings had to be done almost each day. The son, when asked what his father said in reference to the employment of his sister at the time she came, replied: "He never said anything to me in particular." Mr. Eldridge, who ran the farm, testified:

Q. "If she (the plaintiff) went away for a day did Mr. Foster make any remark?

A. "He did.

Q. "What did he say?

A. "He would like to have her at home.

Q. "When she would go away for a day, be absent for a day, during this time what would he tell you?

A. "He said he would like to have her at home.

Q. "Did he make any statements as to whether he needed her services?

A. "He did.

Q. "What did he say about that?

A. "He said he needed her."

This is all the evidence of any conversation of the father about the services.

The brother testified that shortly after the father went to and was living at the Home, the plaintiff spoke to him, he being then guardian, about filing an account; that he did not pay her anything because, as he explained, he and his sister were, so far as they knew, the only heirs, he had paid out considerable money on the father's account, he and the plaintiff were going to see the father through and did not know how much would have to be paid out and he and the plaintiff could settle with each other any differences or accounts.

The only evidence offered by the defense and admitted without objection was a letter from the brother to the defendant dated July 9, 1923, a part of which was "I have taken up the matter of the monument with Mrs. Bryant and she feels that on account of the lack of courtesy, and even decency shown her by one Charles F. Tibbitt of Augusta it will be her duty to place in your hands a bill from her at a nominal price covering her seven years of service and her estimated expenses . . . . This bill will be forwarded to you in a few days."

The law of this State with reference to payment for services by a relative or member of the household has been clearly and definitely stated.    To recover there must be a contract.    It may be express or implied.    It is implied as a matter not of law but of fact.    It must be proved in accordance with the ordinary rule of burden of proof. It is not enough to show that valuable service was rendered.    It must appear that the one who rendered expected compensation and the one who received so understood or under the circumstances ought so to have understood and by his words or conduct or both justified the expectation.    There is not in any given case a legal presumption of any kind that the services were rendered gratuitously or for compensation.    *Saunders* v. *Saunders,* 90 Maine, 284; *Leighton* v. *Nash,* 111 Maine, 528; *Hatch* v. *Dutch,* 113 Maine, 405; *Cheney* v. *Cheney,* 122 Maine, 556.

"It is then incumbent on the plaintiff to satisfy the jury that the services were rendered under circumstances consistent with contract relations between the parties and that the defendant either expressly agreed to pay for the services or to give certain property therefor or that they were rendered by the plaintiff either in pursuance of a mutual understanding between the parties or in the expectation and belief that he was to receive payment and that the circumstances of the case and the conduct of the defendant justified such expectation and belief."

"If it can properly be said that there is any presumption in a given case that the services rendered to a father by a son after he becomes of age, are gratuitous, it is clearly a presumption of fact and not of law.    It is not a uniform and constant rule attached to fixed conditions and applicable only generically.    It is a conclusion from a process of reasoning which the mind of any intelligent person would apply under like circumstances, and it is applicable only specifically. It rests on probability and is the effect of evidence, the result of inferences to be drawn from the facts in the case at the discretion of the jury,—the force of it varying according to circumstances." *Saunders* v. *Saunders,* 90 Maine, 290.

"It must be shown that the plaintiff expected to receive compensation and the defendant's intestate so understood, by reason of a mutual understanding or otherwise or that under the circumstances he ought so to have understood.  .  .  .    Whether the plaintiff expected compensation and whether the defendant's intestate so

understood or ought so to have understood are questions of fact, and must be determined in a case like this where there is no testimony from either of the parties, by a consideration of the circumstances, of their relations to each other, of their conduct respectively, and of the probabilities." *Leighton* v. *Nash*, 111 Maine, 528.

Since the law of this State has been so definitely settled and stated and the questions in any given case reduced to questions of fact, the numerous and varying decisions (see extended note 11 L. R. A., N. S., 873) of other States, in many instances seeming to be in conflict with each other and with our decisions, are often inapplicable. While there are varying theories as to presumptions and counter presumptions and what evidence rebuts presumptions, and as to implications to be drawn from certain kinds of evidence and their effect, and as to whether agreements of this kind must be express and, if so, the admissible proof of them, or may be implied, upon careful examination of the cases it would appear that the seeming differences are often abstract and so minute as not to be of practical consideration and that the differences in the opinions are really, in the final analysis, based upon the views of the court as to the sufficiency or insufficiency of certain kinds of evidence to establish such a claim and as to whether in this class of cases a higher degree of certainty and definiteness in the evidence to establish is required than in the ordinary civil case. In our State there is no such requirement and no distinction is made between cases of this class—although the claim is usually brought against the estate of an alleged deceased promisor—and any other civil case.

And when the parties bear the relationship to each other as in this case, the determination whether, upon the circumstances existing in each case, the services were rendered on the basis of contract or not has been declared by our court to be "peculiarly the province of the jury." *Cheney* v. *Cheney*, 122 Maine, 557.

Of the four cases which this court have decided, *Saunders* v. *Saunders, Leighton* v. *Nash, Hatch* v. *Dutch, Cheney* v. *Cheney*, the first three were against estates and all of them came up on motion, overruled in three and sustained in one. The first also came up on exceptions to instructions and refusal to give instructions, which were overruled. So far as the motions were concerned, the decisions turned on the specific facts of each case.

There is no conflicting evidence in the case before us. The facts are clear. There was no express request by the plaintiff to be paid. No express promise of the defendant to pay. The contract, if it existed, is to be implied. To establish it two facts must be proved. The failure to ·establish either is fatal. Did the plaintiff "then" *Lafontain* v. *Hayhurst*, 89 Maine, 391, i. e., when the services were rendered, expect to be paid and believe she would be paid and did her father so understand or ought under all the circumstances so to have understood and by his conduct justified her expectation and belief.

The plaintiff· was an adult, a married woman, lived in her own home in another town. Her father was old, infirm and increasingly so. He sent for her seventeen days before his wife died. The daughter remained thereafter for seven years, the only woman there, doing all the ordinary household duties, which at times on account of· sick spells of the father were more than ordinary. All the farm work was done by a man hired for that purpose and one of the household. For five months during the last year a male nurse was there. At times when she left the house for a day the father said he needed her and would like to have her at home.

What inferences of fact are to be drawn from "a consideration of the circumstances of their relations to each other, of their conduct respectively and of the probabilities"? The jury concluded there was a.mutual understanding for compensation. We cannot say that as a matter of law there was no evidence from which such an understanding could not be inferred or that the jury's verdict was due to bias or prejudice or was manifestly wrong.

But the defendant contends that the plaintiff did not expect to be paid because the statements made by her brother in his letter to the defendant after the father's death plainly show that she did not consider her father to be her debtor until after the alleged discourtesy and that her claim was not a prior thought but an afterthought. There was no objection to the admission of this letter. It went to the jury, was considered by them. It is a part of the evidence, which we must consider.

The plaintiff on the other hand introduced evidence that she considered with her brother, while he was guardian and shortly after her father left the farm, the presentation of a bill but did not formally do so because of the explanation given.

Evidence of one's state of mind at a given time may be probative of one's state of mind at the necessary time. The state of mind of the plaintiff when the services were rendered is the necessary time here.

What are the inferences to be drawn from the letter? Those claimed by the defendant? What in the light of all the evidence? Could the jury believe that the plaintiff had expectation of compensation when the services were rendered and when she talked with her brother, decided not to present a bill for the reasons given and then changed her mind for other reasons and decided to present. Were these reasonable probabilities? We cannot say as a matter of law they were not. The answers to these questions were conclusions of fact for the jury's determination and "peculiarly the province of the jury."

Our final conclusion therefore is that the verdict is not manifestly wrong and the entry must be:

*Motion overruled.*