HAROLD MACQUINN

*vs.*

MRS. A. MANSFIELD PATTERSON

Hancock.    Opinion dated December 24, 1951.

*Ralph C. Masterman,* for plaintiff.

*H. L. Crabtree, Sr.,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.    This action in assumpsit upon an account annexed is before us on exceptions by the plaintiff to

the acceptance of a referee's report. The exceptions are overruled.

The issue is whether the defendant is liable to the plaintiff for making a gravel fill on defendant's premises. Findings by the referee in favor of plaintiff on all other items in the account are not questioned. There is no dispute about the reasonableness of plaintiff's charges of $550 for gravel and $128 for use of a bulldozer, or a total of $678 for the fill. The issue is liability and not damage.

The principles governing our consideration of exceptions to a referee's report are well established. The report is prima facie correct. The excepting party is confined to the objections set out below. The findings of the referee are conclusive if supported by any evidence of probative value. Whether there is any such evidence is a question of law. When facts are undisputed, and but one possible deduction can be drawn, the question is one of law. *Rule of Court 42,* 129 Me. 519; *Staples* v. *Littlefield,* 132 Me. 91, 167 A. 171; *Hawkins* v. *Theatre Co.,* 132 Me. 1, 164 A. 628; *Flood* v. *Earle,* 145 Me. 24, 71 A. (2nd) 55; *Morneault* v. *Boston & M.R.R.,* 144 Me. 300, 68 A. (2nd) 260; *Paulsen* v. *Paulsen,* 144 Me. 155, 66 A. (2nd) 420; *Knowlton* v. *John Hancock Mutual Life Ins. Co.,* 146 Me. 220, 79 A. (2nd) 581.

In the fall of 1947 defendant's summer home at Bar Harbor was destroyed by fire. At a meeting upon the premises the parties discussed and agreed upon certain work to be undertaken by the plaintiff. The agreement was later set forth in the letters below:

"Mr. Harold MacQuinn

Dear Sir:

Will you please be very careful of the old furnace in my cellar. Edgar is going to have the man who put it in for me look it over—I think the inside may be used.

Will you use the oldest bricks and rubble in spreading the space for terrace on the northeast corner of house lot. I think the outside chimney bricks could, some of them, be used for wall or steps and drainage ducts.

Will you kindly write me what you are going to do for me. I meant to ask you to do this last Sunday it seems more business like and I can show it to my architect. Edgar knows just what I want to save, please consult him if you are in any doubt.

There is a shrub to the north of the house—I think that could be saved and moved in the spring, there is so little—that everything is precious.

Yours very truly,

A. M. Patterson

November 19, 1947"

Upon the back of the above letter is a plan of defendant's lot showing the location of a terrace.

"December 1, 1947

Mrs. A. M. Patterson

139 East 66th Street

New York, New York

Dear Mrs. Patterson:

Thank you for your letter of November 19th.

We have salvaged all the scrap metal at your summer home, but have not disturbed the furnace. Our plans are to take down the foundation wall to the ground level, clean up the debris now in the basement and cement the top of the existing foundation wall.

We plan to use all the rubble which is suitable for the sub-grade of your terrace, leaving the lot

in a neat workable condition.   We will consult Mr. Thomas about anything in question.

Very  truly  yours,

Harold  MacQuinn

by  J"

Mr. Edgar Thomas, referred to as "Edgar" in the defendant's letter, and as "Mr. Thomas" in the plaintiff's letter, was the defendant's gardener.

To understand fully the situation it is necessary to consider certain facts not appearing in the letters.   The referee found, to quote from the report, that at the conference it was agreed "the rubble was to be pushed toward a spot which she (the defendant) indicated she might use as a terrace," and again that "there is some evidence in the case that the (defendant) was planning to rebuild on the lot where the house was burned, but she gave this up after she found out what the costs of rebuilding would be."   The defendant, in substance, said that at the conference she told the plaintiff she hoped to rebuild and that she did not inform him of the change in her intention.

Mr. Thomas, the gardener, was on the premises when the fill was made between the 6th and 10th of April, 1948.   He neither notified the defendant, nor made any objection to the plaintiff.   The plaintiff did not consult him.   The defendant had no knowledge of the gravel fill until after the work was completed.

The referee also found, to quote from the report:

"There was some evidence introduced concerning the authority which the defendant had delegated to her caretaker, Edgar.   That authority is clearly set forth in the defendant's letter to the plaintiff under date of November 19, 1947, wherein she states that "he knew what was to be saved.   If there was any doubt the plaintiff was to consult him"."

"The burden is on the plaintiff. If there was any room for doubt before, the correspondence seems to remove it and we do not find in any of the evidence or the correspondence anything that would legally warrant the plaintiff in believing he was authorized to use the gravel in question."

In reaching the conclusion the referee necessarily found (1) that the express contract did not call for the gravel fill, and (2) that the defendant was not bound under the principles of agency, express or apparent.

The positions of the parties are clearly stated in the following extracts from their testimony:

*Mr. MacQuinn:*

"You have no contract with Mrs. Patterson other than this letter of December 1 which would permit you to haul gravel on the lot.

A.  I consider the conversation that Mrs. Patterson and I had a part of the contract. Mrs. Patterson has stated in a letter that Mr. Thomas would be on the job which was her agent and Edgar knew what she wanted. Edgar saw the fill hauled in and no one said anything. Presumed it was all right. Her agent was on the premises all the time this work was going on and as she said in her letter he knew what she wanted. He should have been told it would be up to him to stop the work as her agent.

Q.  You didn't know what authority he had from her?

A.  Only what she states in the letter.

Q.  Did you ask Mr. Thomas about the advisability of hauling in fill?

A.  I did not.

Q.  How often was Thomas on the lot?

A. He was on the job every day we worked there.

- - - - -

Q. And you have no other authority for hauling gravel except as stated in that letter?

A. Only from the conversation that Mrs. Patterson and I had in regards to the condition of the lot and cleaning the lot up.

Q. Your conversation had no mention of gravel?

A. Well, I didn't see how we could leave the lot in a workmanlike manner without hauling gravel in."

*Mrs. Patterson:*

Q. "What did you understand in Mr. MacQuinn's letter of December 1, when he spoke of leaving the lot in a neat workmanlike manner?

A. I understood he was going to use the bulldozer to push the chimneys down and with the bulldozer he would push what rubble which was the remains of the house and I asked him to push it in a certain direction. That was all. Nothing further.

Q. There was no mention of having gravel hauled in?

A. Never.

Q. Did Mr. Thomas have any authority from you to assent to whatever Mr. MacQuinn was doing?

A. No. Never."

The plaintiff argues: (1) that the agreement included the gravel fill, and (2) if not, that the plaintiff is entitled to recover upon an implied contract arising through the agency of defendant's gardener.

Upon the first point plaintiff says defendant gave the impression she intended to rebuild and the plaintiff, to quote

from the brief, "assumed rightfully that he should put the place in shape according to the usual practice and custom in such cases."

Granted the defendant gave an impression of an intent to rebuild, plaintiff's argument rests upon a "usual practice and custom" that "leaving the lot in a neat workmanlike condition" (to quote from plaintiff's letter) called for a gravel fill. There is no evidence in the record of a custom or usage, either locally or generally, of the nature suggested by the plaintiff. Surely no such custom or usage is so generally known that judicial notice may be taken thereof.

We have considered plaintiff's first point, although there is considerable doubt whether it is raised by the objections. The express agreement did not include the gravel fill.

Upon the second point the plaintiff says in substance that the gardener's knowledge of the making of the fill must be imputed to the defendant, with liability resulting under an implied contract. Without doubt if the defendant had knowingly and without objection permitted the plaintiff to make the gravel fill, she would have been liable to pay therefor. See *Wadleigh* v. *Pulp & Paper Company,* 116 Me. 107, 100 A. 150; 58 Am. Jur. 514; 1 Williston on Contracts, Rev. Ed. Sec. 91A. Here the question is whether the defendant is bound by the knowledge of the gardener.

As we have shown, the defendant did not know of the fill until after it was completed. No basis for liability can be found either in actual knowledge or failure to object on her part.

In our view of the case it is not material whether the conclusion of the referee was based upon lack of express or apparent authority in the gardener. The result in either event must necessarily have been the same.

The express authority of the gardener is contained in the following sentences in the letters:

"Edgar knows just what I want to save, please

consult him if you are in any doubt." (from defendant's letter)

"We will consult Mr. Thomas about anything in question." (from plaintiff's letter)

The referee concluded the authority was limited by the defendant's letter. Precisely how the authority was then limited is not stated in the report. The plaintiff, on the other hand, says the limitation on authority is stated in the plaintiff's letter. Obviously if the plaintiff's letter is taken alone without defendant's letter, the extent of the agency is enlarged.

There is, however, a clear overriding limitation on the exercise of the authority, whether we take the limitations in the defendant's or the plaintiff's letter. It is through consultation that the gardener exercises his authority with respect to the plaintiff. The inference is clear that the gardener only in giving advice in such consultation could act for his principal, the defendant, in so far as the plaintiff was concerned.

The decisive fact is that the plaintiff did not consult with the gardener. His own testimony was to this effect. There was evidence of probative value to use the test of a referee's findings that the plaintiff did not rely in any degree upon the express authority of the gardener.

If we apply the principles of apparent authority we must reach the same conclusion.

The existence and extent of apparent authority and the reliance thereon, are facts to be determined here by the referee. Illustrations of apparent authority as a fact to be found by a jury are found in *Frye* v. *DeNemours & Company,* 129 Me. 289, 151 A. 537; *Heath* v. *Stoddard,* 91 Me. 499, 40 A. 547; *Feingold* v. *Supovitz,* 117 Me. 371, 104 A. 697. See also 2 Am. Jur. 82 et seq; 2 C. J. S. 1205 et seq and 1217; 2 C. J. 574 et seq.; 1 Williston on Contracts, Rev.

Ed. Sec. 277; Restatement, Agency, Sec. 8. The rule has been well stated in Restatement Agency, Sec. 273 as follows:

"Except where there is reliance upon the appearance of agency, a principal is not bound by knowledge of an agent concerning matters as to which he has only apparent authority."

Whatever the apparent authority, if any, of the gardener may have been, the plaintiff cannot escape the finding that the plaintiff did not rely upon the agency. The situation is analogous with that presented in the discussion of express authority.

Express authority existed at best only upon consultation, and there was no consultation. If there was apparent authority, there was clearly no reliance thereon. In either event, the referee was entitled to believe that the agency of the gardener was not a factor in the delivery and spreading of the gravel for the fill. In other words, the referee could have found, and necessarily in reaching his ultimate conclusion did find, that the plaintiff in making the fill relied upon his interpretation of the agreement with the defendant. By mistake he made the fill without noting that the defendant had not authorized him to undertake the work.

It will be unnecessary to review in detail the nine objections to the acceptance of the report. In seven of the nine objections the plaintiff charges error by the referee in failing to take into consideration certain principles of law and certain facts relating to the agency of the gardener. As we have pointed out, whatever the scope of the agency, and whether express or apparent, there was neither exercise of express authority nor reliance upon apparent authority.

In the third objection it is said that the referee disregarded a certain fact showing the defendant's intention to

rebuild. The objection does not accurately state the stipulation from which it is taken but in any event, the report shows the fact of the defendant's intention was considered by the referee. The first point in the plaintiff's argument apparently relates to this objection.

There remains the ninth objection reading "The referee failed to take into consideration that the defendant was unjustly enriched by his decree."

We do not understand the plaintiff seeks—nor should he —to recover by way of restitution for a mistake by plaintiff in making the fill. The point of the plaintiff in the objection is that in light of defendant's silence from receipt of plaintiff's letter to receipt of his bill after the work was completed, and in light of allowing "him in the presence of her agent to fix the lot in a good and proper manner," the defendant will be unjustly enriched unless required to pay for the fill.

The claim is based, it will be at once noted, upon the agency of the gardener. The plaintiff seeks to recover upon a contract made with the defendant, or her agent. As we have elsewhere pointed out, it is our view that the referee was amply justified in finding no such contract, express or implied, existed.

The plaintiff takes nothing from the objections. The report was properly accepted in the Superior Court.

The entry will be

*Exceptions overruled.*