NELLIE COLVIN

*vs.*

MARK L. BARRETT, ADMR. C. T. A.
OF THE ESTATE OF
JOHN J. MORGAN

Cumberland. Opinion, December 1, 1955.

*Berman, Berman & Wernick,*
*John Flaherty,* for plaintiff.

*John Curley,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. CLARKE, J., did not sit.

FELLOWS, C. J.    This is an action of assumpsit brought by Nellie Colvin against the administrator with will annexed of the estate of John J. Morgan to recover for personal services alleged to have been rendered to the deceased, John J. Morgan, during his lifetime from July 1, 1950 to April 8, 1953. The defendant pleaded the general issue. The case was tried before a jury, and at the conclusion of the plaintiff's case the defendant rested and moved for a directed verdict which was granted. The case is now before the Law Court on plaintiff's exceptions.

It was stipulated and agreed by and between counsel that the claim and affidavit of the plaintiff was filed seasonably in the Probate Court. The evidence introduced by the plaintiff consisted only of a deposition of Leslie Drew who lived at 241 Walton St. in Portland during the lifetime of the decedent Morgan. The plaintiff lived at 249 Walton St. The

defendant's testator, Morgan, lived at 235 Walton St. prior to his death. Morgan owned the tenements occupied by the plaintiff Nellie Colvin, the tenement occupied by himself, and the tenement occupied by the deponent Drew. The three tenements were approximately fifty feet apart, and plaintiff Colvin and deponent Drew rented of the decedent for more than fifteen years previous to his death.

After the death of Morgan's wife in 1950, deponent Drew stated that he called on Morgan in his home frequently, if not daily. After Mrs. Morgan went to the hospital and after her death, Drew said that when he called on Morgan, the plaintiff Mrs. Colvin was there cooking his meals, washing his clothes, helping him put on his overcoat, cleaning up the house, and caring for him, and that he (Drew) paid his rent to Mrs. Colvin at Morgan's request. In September or October, 1952 Morgan told Drew "I think Nellie is a good honest woman to look after my affairs. She keeps everything all straight and I think she should be well repaid for what she has done or is doing." Mr. Morgan went to the hospital for treatment about March or April, 1953 and died in May, 1953.

Drew said he was a tenant of the deceased Morgan for about fifteen years and Mrs. Colvin was a tenant of Morgan for a longer period. Drew stated he paid his own rent during this period to Mrs. Colvin, and that Mrs. Colvin showed him (Drew) at four or five different times receipts for her rent signed by the deceased. "They were in the receipt book. She hadn't taken them out. She said 'there is my receipt right there' and hers was the next one to ours." Mrs. Colvin did not state that she had paid her rent, she simply showed her receipts. They were in Morgan's receipt book. Drew testified that his calls were "sometimes before dinner, sometimes would go over after dinner; sometimes after supper." Morgan never mentioned again to Drew that Mrs.

Colvin should be paid. Drew did "errands" for Morgan, such as driving his car for him, but was not paid. Any work Drew did was as a "neighbor, friend and tenant." Morgan never said at any time to Drew that he had paid the plaintiff anything, and the plaintiff never told Drew that she had been paid anything. Drew did not know of his own knowledge whether or not Mrs. Colvin was to receive anything under Morgan's will.

The last few months Morgan could not get on his coat or sweater himself and Mrs. Colvin had to "move him up to the table," and help him to get to bed. "There were times that Mrs. Colvin had to steady his hand for him to sign the rent receipts." But every receipt for rent received by Drew was signed by Morgan, although his hand was "shaky" at the last of his life.

At the conclusion of the reading of the deposition a verdict for defendant was moved for and directed.

The question presented is whether there was sufficient evidence submitted in the deposition offered by the plaintiff to require factual determination by the jury. There is no conflict of testimony of witnesses because there is only the one witness. Assuming, as we must, that the testimony of the deponent Drew is true, (*Jordan* v. *Portland Coach Co.,* 150 Me. 149, favorable to plaintiff) does his testimony warrant a verdict for some amount in the plaintiff's favor? Would a contrary verdict be sustained?

"It is a familiar principle that when services are rendered with the knowledge and consent of another under circumstances consistent with contract relations between the parties, a promise to pay is ordinarily implied by law on the part of him who knowingly receives the benefit of them, and is enforced on grounds of justice in order to compel the performance of a legal and moral duty." *Cole* v. *Clark,* 85 Me. 336, 338.

In a case brought by a daughter against the estate of her father, the court say: "The law of this State with reference to payment for services by a relative or member of the household has been clearly and definitely stated. To recover there must be a contract. It may be express or implied. It is implied as a matter not of law but of fact. It must be proved in accordance with the ordinary rules of burden of proof. It is not enough to show that valuable service was rendered. It must appear that the one who rendered expected compensation and the one who received so understood or under the circumstances ought so to have understood and by his words or conduct, or both, justified the expectation. There is not in any given case a legal presumption of any kind that the services were rendered gratuitously or for compensation." There may be strong inferences, but no legal presumption. *Bryant* v. *Fogg, Admr.*, 125 Me. 420. See also *Saunders* v. *Saunders*, 90 Me. 284; *Leighton* v. *Nash*, 111 Me. 525; *Hatch* v. *Dutch*, 113 Me. 405; *Cheney* v. *Cheney*, 122 Me. 556.

"If it can properly be said that there is any presumption in a given case that the services rendered to a father by a son after he becomes of age, are gratuitous, it is clearly a presumption of fact and not of law. It is not a uniform and constant rule attached to fixed conditions and applicable only generally. It is a conclusion from a process of reasoning which the mind of any intelligent person would apply under like circumstances, and it is applicable only specifically. It rests on probability and is the effect of evidence, the result of inferences to be drawn from the facts in the case at the discretion of the jury, the force of it varying according to circumstances. *Saunders* v. *Saunders*, 90 Me. 290." *Bryant* v. *Fogg*, 125 Me. 420, 423.

In a case involving goods and services where there was no family relationship and in the first count in the declaration

an agreement was alleged to have been made between plaintiff and defendant, whereby defendant was to deed her property for care by plaintiff, the second count was an account annexed stating alleged goods and services, and the third count was for money had and received, it was held (1) that if plaintiff left the farm, without just cause as defendant claimed, and there was therefore a breach of contract, the plaintiff could not recover on *quantum meruit;* (2) that if plaintiff left the farm as plaintiff claimed, because of a wilful breach by defendant, the plaintiff might recover on *quantum meruit;* (3) "If the agreement, instead of being as contended by the plaintiff or the defendant, was not completed because there was not a clear accession on both sides to one and the same terms, then the plaintiff could maintain an action on a *quantum meruit* because where one party renders services beneficial to another under circumstances that negative the idea that the services were gratuitous, and the party to whom the services are rendered knows it and permits it and accepts the benefit, he is bound to pay a reasonable compensation therefor. That is because such facts and circumstances justify a presumption that the party to whom the services are rendered must have requested them and must have intended to pay for them, and, therefore, the law implies a promise on his part to pay for them. *Wadleigh* v. *Pulp & Paper Co.,* 116 Me. 113. We think the circumstances here satisfy the rule if the minds of the parties did not meet. The amount of benefit to the defendant would be a question of fact for the determination of the jury."

The court then sustained the motion for a new trial, stating: "Upon a careful examination of the facts, we are of the opinion that the conclusions of the jury were not authorized by the proof and that the only authorized conclusion is that the minds of the parties did not meet and no completed contract was made. This conclusion harmonizes the facts in the case." *Thurston* v. *Nutter,* 125 Me. 411.

"It is an elementary principle that when valuable services are rendered by one person at the request, or with the knowledge or consent of another, under circumstances not inconsistent with the relation of debtor and creditor between the parties, a promise to pay is ordinarily said to be implied by law on the part of him who knowingly receives the benefit of them, and is enforced on grounds of justice in order to compel the performance of a legal and moral duty. As observed by Chief Justice Marshall in Ogden v. Saunders, 13 Wheat, 214, 'a great mass of human transactions depends upon implied contracts, which grow out of the acts of the parties. In such cases the parties are supposed to have made those stipulations which as honest, fair and just men, they ought to have made.' But the word 'contract' is almost universally employed 'to denote an undertaking voluntarily entered into between the parties, not drawing into contemplation any creation of the law.' Bishop Cont. Sec. 191. All true contracts grow out of the mutual intention of the parties; and if, in a particular instance there is evidence arising from the situation, conduct or family relationship of the parties tending to show that the service was rendered without expectation of any payment or without other payment than such as was received as the service progressed, it cannot be said as a matter of law that a contract is implied on the part of the defendant to pay for such services. Cole v. Clark, 85 Me. 338, and authorities cited." *Saunders* v. *Saunders,* 90 Me. 284, 289.

The cases indicate that it is incumbent upon a plaintiff to prove that services were rendered under circumstances consistent with contract relations, and that the defendant either expressly agreed to pay or to give certain property therefor, or that they were rendered in pursuance of a mutual understanding between the parties that the plaintiff was to receive payment, or in the expectation and belief that he was to receive payment, and that the circumstances

and conduct of the defendant justified such expectation and belief. If there is any presumption that services rendered to a near relative are gratuitous it is a presumption of fact and not of law. It is a question of probabilities according to human experience and the true inferences to be drawn from the facts and circumstances presented. The plaintiff is limited to the proof of an actual contract, express or implied in order to overcome the adverse inference one would ordinarily draw from the fact of relationship through blood or marriage between plaintiff and defendant. See cases previously cited herein and also the case of *Thurston* v. *Nutter* reported in 126 Me. 609; *Atl.* v. *Cannell, Admr.*, 126 Me. 590; *MacQuinn* v. *Patterson*, 147 Me. 196.

As stated in *Leighton* v. *Nash, Exrx.*, 111 Me. 525 at page 528, "There having been no express agreement to pay, it was incumbent on the plaintiff to prove that the services were rendered by the plaintiff either in pursuance of a mutual understanding between the parties that she was to receive payment, or in the expectation and belief that she was to receive payment and that the circumstances of the case and the conduct of the defendant justified such expectation and belief." The court further states, "It is not enough to show that valuable service was rendered. It must be shown also that the plaintiff expected to receive compensation and that the defendant's intestate so understood, by reason of mutual understanding or otherwise, or that under the circumstances he ought to have so understood. Both propositions are essential and must be proved. This is the law of implied contracts." The court, page 528, further states, "Not once during the six years is it shown that there was any conversation between the parties indicating that either of them understood that the service was rendered on a commercial basis. The subject is not shown ever to have been referred to by either. And during all the time, the plaintiff's husband was regularly paying rent for the tenement they

occupied, month after month. If the plaintiff then expected to be paid for her services, it would seem likely that she would have attempted to have her claim used in diminution of rent, although the rent was for her husband to pay, and not for her, unless she wished to conceal her expectation from Mr. Pearson, and make claim for compensation only after his death, when he could no longer dispute it. Such an assumption would not be creditable to the plaintiff, nor helpful." *Leighton* v. *Nash, Exrx.,* 111 Me. 525.

The Law Court must decide, whether upon all the evidence, the case should have been submitted to the jury. *Dyer* v. *Power & Light Co.,* 119 Me. 225. Would a verdict for the plaintiff be sustained? *Ward* v. *Power and Light Co.,* 134 Me. 430; *Fort Fairfield* v. *Millinocket,* 136 Me. 426. Verdict should not be directed if any reasonable view of the evidence will allow recovery. *Andreu* v. *Wellman,* 144 Me. 36; *Giguere* v. *Morrisette,* 142 Me. 95, 101.

There is not in any given case a legal presumption that services are rendered either gratuitously or for compensation. The issue is one of fact, whether under the circumstances of the particular case the services were rendered on the basis of contractual relation, either express or implied.

It appears in many of the cases, where a party seeks to recover for reasonable value of services rendered and there is no direct proof of a written or an oral contract, that there often is a relationship between the parties that causes what some cases call "a presumption of fact" that it was a gratuity; or that the plaintiff expected a gift or a bequest, if there was a will; that there was no expectation to pay and no expectation to be paid. The relation of the parties, either through blood, marriage, friendship, business dealings, or neighborliness, may cause a very strong, if not conclusive, inference that there is nothing due a claimant. It is not a

"presumption in law" although to the reasonable man of ordinary intelligence it may be a "presumption of fact." It is *fact* however, and because men may differ as to the inference to be drawn from given facts, it becomes a question for a jury.

In this case the facts show that services were rendered to the deceased landlord by the tenant plaintiff, and the tenant showed rent receipts signed by deceased. It might be inferred that the services were gratuitous under the circumstances of being a near neighbor, or that the rent receipts showed that the services were paid for, or that the plaintiff expected a gift or bequest, which the will (had it been offered in evidence) might have shown. In any event, according to the deposition alone, there was a question of fact that the jury should have passed on. Reasonable minds might differ on what the deposition shows.

If there had been evidence, in addition to the deposition, the case might be controlled by *Weed* v. *Clark*, 118 Me. 466 at 469, where the court say: "This case totally lacked proof of an express promise on decedent's part to pay plaintiff for her work. The theory that her services were performed under an implied contract for compensation encountered and was outweighed by convincing evidence that she was already paid. One who withholds his demand while an alleged debtor is alive, and in after-time seeks to compel payment by the latter's estate, has no right to expect that such claims will escape close scrutiny or be enforced in the absence of evidence preponderantly amounting to clear and cogent proof. That plaintiff's witnesses testified honestly concerning the performance of services to her, was unquestioned. But, extending complete credence, their testimony tending to show the existence of an implied promise to reward her, was overborne by that of the defense, which made known that she was not left by decedent without payment of her

hire. A verdict for plaintiff in this behalf could not be sustained."

Because the whole evidence, however, in the case at bar, is contained in the one deposition, and because reasoning and reasonable minds might differ as to what the inferences should be from the evidence contained in the deposition, the case should have been submitted to the jury. The entry must be

*Exceptions sustained.*