George B. MORRILL, Jr., and Elizabeth H. Morrill, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 7-162.

United States District Court
D. Maine, S. D.
April 27, 1964.

Brooks Whitehouse, John A. Mitchell, Portland, Me., for plaintiffs.

Alton A. Lessard, U. S. Atty., Dist. of Me., Portland, Me., Rufus E. Stetson, Jr., Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

GIGNOUX, District Judge.

This is an action for refund of federal income taxes for the years 1959, 1960 and 1961 in the amounts of $1,736.75, $2,-344.50 and $3,064.63, respectively. The only question presented is whether the amounts of the income of four trusts established by George B. Morrill, Jr., which the trustees applied to the payment of the tuition and room charges of the taxpayers' four minor children at private schools and colleges, were taxable

as income to him under the provisions of Section 677(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 677(a).

The relevant facts, which have been stipulated, may be briefly stated: In April, 1959 Mr. Morrill established four short-term trusts, one for the benefit of each of his four minor children, and named a corporate trustee of each trust. The income of each trust was to be accumulated until the child became 21 years of age, at which time the accumulated income, and thereafter during the remaining term of the trust any current income, was to be distributed to the beneficiary. Ten years after the date of their creation, the trusts were to terminate and the corpus of each was to revert to Mr. Morrill. Each of the trusts also provided that during the minority of the beneficiary, the trustee might, in its discretion, use the trust income "for the payment of room, tuition, books and travel to and from any private school, college or other institution of learning at home or abroad."

During the tax years in question, the taxpayers' children attended Vassar College, Connecticut College, Brown University, The Holderness School and The Waynflete School. Mr. Morrill expressly assumed responsibility for the payment of the tuition, room, board and other expenses of his children at Vassar College and Connecticut College.[1] There was no express agreement between Mr. Morrill and Brown University, The Holderness School, or The Waynflete School regarding the payment of the expenses of his children at those schools. However, each school submitted its bills to Mr. Morrill. He then wrote out a personal check to the institution for that portion of the bill other than room and tuition, sent the bill with his personal check to the trustee of the appropriate trust, and requested the trustee to pay from the trust the room and tuition charges on the bill. The trustee then mailed to the institution its check in payment of the room and tuition charges, together with Mr. Morrill's check for the balance of the bill involved.

George B. Morrill, Jr. and Elizabeth H. Morrill, as husband and wife, filed joint federal income tax returns for the calendar years 1959, 1960 and 1961. They did not include in the returns any of the income of the four children's trusts. Upon audit of the returns, the Commissioner determined that the amounts of trust income which had been applied in payment of the children's tuition and room charges had been used to satisfy legal obligations of Mr. Morrill, as father of the children, and were therefore taxable as income to him under Section 677 of the 1954 Code.[2] Plaintiffs paid under protest the result-

---

1. Mr. Morrill signed the following agreement with Vassar College: "In consideration of the acceptance by Vassar College of Bonnie Elizabeth Morrill I agree to be responsible for her tuition, room and board, and other incidental expenses, in accordance with the terms and conditions stated in the current catalogue." He signed the following agreement with Connecticut College: "Bills may be sent to me and I assume responsibility for their payment until further notice."

2. The Commissioner initially based his assessment on Section 677(b). The Government later shifted its ground for asserting taxability to Section 677(a). During legal argument before the Court, counsel for the Government and for the taxpayers conceded that Section 677(b) has no application to the facts of this case. In this they were correct because

Subsection (b) merely limits the tax, imposed by Subsection (a), on trust income which may be applied for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, to that portion of the trust income which is so applied. Here the Government has not attempted to tax that part of the trust income which was not used to pay the school and college bills in issue. Congress enacted what is now Subsection (b), 58 Stat. 51 (1944), to change the law established by the holding in Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154 (1942). See 6 Mertens, Federal Income Taxation § 37.21 (1948).

Despite the Government's change of theory, the burden of proof in this tax refund suit remains on the taxpayers to show that they have overpaid their taxes for the years in question. Lewis v.

ing deficiency assessments, and instituted this suit after their claims for refund were disallowed. For reasons which it will state briefly, this Court has concluded that the Commissioner was correct.

 Section 671 of the Internal Revenue Code of 1954, 26 U.S.C. § 671, provides that the income of a trust is taxable to the person specified in the Code as the owner of the trust. Section 677 (a) of the Code provides in relevant part:

"§ 677. Income for benefit of grantor

"(a) General rule.—The grantor shall be treated as the owner of any portion of a trust * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be—

"(1) distributed to the grantor;"

A long line of judicial decisions applying Section 677(a) and its predecessor statutes has established that trust income which is used to satisfy a legal obligation of the grantor is, in effect, distributed to him and is, therefore, taxable to him. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3 (1935) (trust income used to discharge divorced settlor's alimony obligation); Helvering v. Stokes, 296 U.S. 551, 56 S.Ct. 308, 80 L.Ed. 389 (1935), reversing, C. I. R. v. Stokes, 3 Cir., 79 F.2d 256 (trust income used to discharge settlor's legal obligation to support, educate and maintain his minor children); Helvering v. Schweitzer, 296 U.S. 551, 56 S.Ct. 304, 80 L.Ed. 389 (1935), reversing 7 Cir., 75 F.2d 702 (trust income used to discharge settlor's legal obligation to support, educate and maintain his minor children); Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390 (1935), reversing 2 Cir., 76 F.2d 507 (trust income used to discharge settlor's debt); Helvering v. Coxey, 297 U.S. 694, 56 S.Ct. 498, 80 L.Ed. 986 (1936), reversing 3 Cir., 79

F.2d 661 (trust income used to discharge settlor's alimony and support obligation); Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665 (1940) (trust income used to discharge divorced settlor's alimony obligation); Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154 (1942) (trust income used to discharge settlor's legal obligation to support, educate and maintain his minor children); Mairs v. Reynolds, 120 F.2d 857 (8th Cir. 1941) (trust income used to discharge settlor's legal obligation to support and educate his minor children); Hamiel's Estate v. Comm'r, 253 F.2d 787 (6th Cir. 1958) (trust income used for the support, maintenance and education of settlor's minor child); Sheaffer's Estate v. Comm'r, 313 F.2d 738 (8th Cir.), cert. denied, 375 U.S. 818, 84 S.Ct. 55, 11 L.Ed. 2d 53 (1963) (trust income used to discharge settlor's primary obligation to pay gift taxes arising from transfers in creation of the trust.) The Treasury Regulations reflect this fundamental principle. Treas. Reg. § 1.677(a)–1(d). The transaction is regarded "as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor." Douglas v. Willcuts, supra, 296 U.S. at 9, 56 S.Ct. at 63, 80 L. Ed. 3. The income is taxable to the grantor when used to discharge his individual obligation, whether imposed by law or by contract. 6 Mertens, Federal Income Taxation § 37.06 at 434 (1948); compare Douglas v. Willcuts, supra with Helvering v. Blumenthal, supra.

 In the present case, the trust income paid to each of the schools and colleges was used to defray expenses for which Mr. Morrill was legally liable. The taxpayers concede that Mr. Morrill was personally obligated for payment of his children's expenses at Vassar College and Connecticut College, because he had expressly assumed that responsibility. It also seems very evident that Mr. Morrill had impliedly obligated hmself to pay his children's bills at Brown University, The

Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Roybark v. United States, 218 F.2d 164 (9th Cir. 1954);

Maine Steel, Inc. v. United States, 174 F.Supp. 702, 715 (D.Me.1959).

Holderness School and The Waynflete School. It is a settled principle of contract law that when one renders services to another at the request, or with the knowledge and consent, of the other, and the surrounding circumstances make it reasonable for him to believe that he will receive payment therefor from the other, and he does so believe, a promise to pay will be inferred, and there is an implied contract. 3 Corbin, Contracts, § 566 (1960); Restatement, Contracts § 72 (1932); Saunders v. Saunders, 90 Me. 284, 38 A. 172 (1897); Leighton v. Nash, 111 Me. 525, 90 A. 385 (1914); Gordon v. Keene, 118 Me. 269, 107 A. 849 (1919); Stinson v. Bridges, 152 Me. 306, 129 A.2d 203 (1957). The implied obligation to pay arises whether the services are rendered directly to the other person or to a third person at the request of the other. 3 Corbin, op. cit. supra, § 566 at 312–14. The application of this principle to the determination of Mr. Morrill's obligations with reference to payment of the children's expenses at Brown University, The Holderness School and The Waynflete School is clear. Mr. Morrill was the parent and natural guardian of the children, and insofar as the record shows, approved of their enrollment in these institutions. The record is devoid of evidence that the schools were asked, or agreed, to accept the children with the understanding that they would look only to the trusts for the payment of their room and tuition charges—in fact, there is no evidence that the schools were even aware of the existence of the trusts when they accepted the children. Nor is there any suggestion that the schools looked to the children themselves for the payment of these bills. In each instance the institutions sent their bills to Mr. Morrill. Not once did they submit their bills to the trustees or to the children. Under these circumstances, the only reasonable conclusion is that the schools believed that Mr. Morrill was to be responsible for payment of any bills incurred on behalf of his children. In this they were clearly justified, as it was reasonable for them to expect, in the absence of an express disclaimer by him of an intention to be responsible for the bills, that he would pay for his children's education.

Plaintiffs argue that Mr. Morrill at most undertook, as a party secondarily liable, to guarantee payment of the schools' bills by the children, as the primary obligors. In this view, they assert that the payments by each trustee satisfied the child's obligation and merely extinguished that of Mr. Morrill. The fallacy in this argument is that it presupposes the existence of contracts between the schools and the children. There is no indication that there were any such express contracts; nor is there any showing of circumstances from which a court could imply such contracts. Indeed, it is incredible that these institutions were looking to the children, all of whom were minors without any apparent assets of their own, for payment of these bills. The facts of the case clearly establish that Mr. Morrill, rather than his children, expressly or impliedly undertook to assume primary responsibility for the payment of the school bills here in issue, and that he, and he alone, was legally liable therefor.

 The Court holds that the amounts of trust income which the trustees applied in payment of the tuition and room charges of the taxpayers' four minor children at the private schools and colleges which they attended during the tax years in question were used to satisfy express or implied contractual obligations of Mr. Morrill, the grantor of the trusts, and were therefore taxable as income to him under the provisions of Section 677 (a) of the 1954 Code. In view of this disposition of the case, it is unnecessary for the Court to consider the Government's alternative contention that such income was taxable to Mr. Morrill, also under Section 677(a), on the theory that Mr. Morrill, as a parent, was under a duty imposed by Maine law to pay the school and college bills of his children. Compare Mairs v. Reynolds, supra.

Judgment will be entered for the defendant against the plaintiffs, with costs.