John J. BOURISK, Sr., et al.

v.

Michael AMALFITANO.

Supreme Judicial Court of Maine.

Nov. 2, 1977.

Isaacson & Isaacson by Robert S. Hark, Lewiston, for appellants.

**150** ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Berman, Berman & Simmons, P. A. by Gary Goldberg, Jack H. Simmons, Lewiston, for appellee.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, and GODFREY, JJ.

WERNICK, Justice.

On March 5, 1973 defendant Michael Amalfitano and a corporation, Select-A-Home, Inc., executed a written document in which it was stated that Select-A-Home would construct an apartment building for defendant and defendant would pay the sum of $104,804.00 for the construction work

"so long as . . . [it] begins within ninety (90) days from the date hereof."

Also included in the writing were other pertinent provisions as follows:

"3. Amalfitano shall pay to the said Select the sum of $5000 in cash if the said Select does not build the above mentioned apartments as indicated above.

"4. If Select does construct the said apartments for the price mentioned above [$104,804.00], the covenant concerning the $5000 payment shall be null and void."

Select-A-Home did not commence construction within the 90 day period. On June 25, 1973 (approximately three weeks after expiration of said 90 day period) Select-A-Home made an assignment to the plaintiffs herein—John J. Bourisk, Sr., and the corporation JBL Enterprises, Inc.—of

"all of its right, title, and interest in and to the proceeds emanating from a certain Agreement, dated March 5, 1973, between it and one Michael Amalfitano, . . . relating to the construction of an eight-unit apartment, . . . ."

In August, 1974, plaintiff Bourisk instituted the present civil action in the District Court, Division of Southern Androscoggin, claiming that defendant Amalfitano owed him $5,000.00 under the agreement defendant had made with Select-A-Home, Inc. In October, 1974, the case was removed to the Superior Court (Androscoggin County), and

on March 1, 1976 JBL Enterprises, Inc. was added as a party plaintiff.

The pleadings having been completed and the parties having filed several affidavits, defendant filed a motion asking that summary judgment be granted in his favor. On March 26, 1976 the Justice presiding in the Superior Court granted the motion for summary judgment and ordered entry of summary judgment in favor of the defendant. The presiding Justice so ruled because he considered the purported agreement on which plaintiff was relying to be unenforceable as a binding contract. Plaintiffs have appealed from the judgment entered in defendant's favor. We sustain the appeal.

Before us, defendant has sought to amplify the "unenforceable" rationale of the presiding Justice with the argument that the written document on which plaintiff has sued, while giving the illusion of being contractual in nature, is in reality not at all a legally binding contract. In support of this contention defendant makes the point that under the writing of March 5, 1973 he purportedly becomes liable to pay $5,000.00 to Select-A-Home for nothing—i.e., merely by virtue of Select-A-Home's failing to commence construction within 90 days.

We find the argument unpersuasive.

The record amply indicates ambiguity as to the intention of the parties who executed the March 5, 1973 writing. One aspect of this ambiguity is that the parties may have conceived the March 5, 1973 document as supplementing a more comprehensive undertaking which was already in process and remained to be completed. The affidavit of Robert L. Berube, General Manager of Select-A-Home, Inc., discloses that Berube became employed by Select-A-Home at a time when Select-A-Home was "just about completing the first set of apartments for Amalfitano." Berube's affidavit also refers to a "second set of apartments" being built. It is thus suggested that defendant and Select-A-Home were parties to an undertaking involving *two* sets of apartments to be constructed for defendant by Select-A-Home.

In the affidavits of defendant Berube and Roger Robitaille, a former employee of Select-A-Home, mention is made of the "Heritage Knoll Apartments", or the "Heritage Knoll Project." The affidavit of Berube, in particular, gives indication that the "Heritage Knoll Project" was to consist of the construction of two apartment houses.

The affidavit of defendant speaks of a civil action brought by defendant against Select-A-Home, involving violations of contracts signed on June 15, 1973 and January 5, 1973. This subject is also adverted to in the affidavit of Robitaille which states:

"at the time Select-A-Home, Inc. shut down, work was not completed on two houses which are the subject of suits by the said Michael Amalfitano against the said Select-A-Home, Inc."

Robitaille's affidavit adds that

"after July 17, 1973 the said Select-A-Home, Inc. did not have any presentability to complete said other contracts."

All of these statements suggest that the defendant and Select-A-Home may have intended the March 5, 1973 written document to be a supplement covering the second part of a single overall project the first portion of which, dealt with in other documents, had just about been completed when the March 5, 1973 writing was executed.

■ We conclude, therefore, that the affidavits reveal genuine questions of material fact:—whether the March 5, 1973 written document was intended by the parties to stand within its own confines as the entire integrated agreement of the parties or, rather, was intended in supplementary manner to reflect the latter part of a fuller understanding of the parties—concerning a project already in process but only partially completed—to establish the entirety of which it would be necessary to introduce other documents in evidence.

■ In light of this ambiguity another point becomes critical and precludes a proper disposition of the case at bar by summary judgment. Even if after an evidentiary hearing it should be factually determined that defendant and Select-A-Home intend-ed their March 5, 1973 writing to represent a self-contained, fully integrated agreement, appropriate evidence might show it to be a legally enforceable contract. A correct statement of Maine law appears in *Morrill v. United States*, 228 F.Supp. 734 (D.C.Me.1964) as follows:

"It is a settled principle of contract law that when one renders services to another at the request, or with the knowledge and consent, of the other, and the surrounding circumstances make it reasonable for him to believe that he will receive payment therefor from the other, and he does so believe, a promise to pay will be inferred, and there is an implied contract." (p. 737)

See also: *Colvin v. Barrett*, 151 Me. 344, 352, 118 A.2d 775, 780, (1955), where this Court also stated that it is an issue of fact

" . . . whether under the circumstances of the particular case the services were rendered on the basis of contractual relation, either express or implied."

As relevant to this matter of whether there may have existed a quasi-contractual obligation of defendant to Select-A-Home when the March 5, 1973 writing was executed, the affidavit of Robert L. Berube says:

"Select-A-Home had, in building the first buildings . . . gone to excess expenses in putting in sewers for the second buildings."

This statement raises a factual question as to whether Select-A-Home, in connection with the contemplated construction of the second building, had performed work for defendant in circumstances making it reasonable for Select-A-Home to have expected to be compensated by defendant. If in their writing of March 5, 1973 defendant and Select-A-Home were intending to provide for the liquidation of this already existing quasi-contractual obligation of defendant to Select-A-Home, consideration could be found for defendant's promise to pay $5,000.00 regardless of whether or not Select-A-Home began construction within 90 days.

"A past debt still existing and enforceable, is a sufficient basis for the enforcement of a new promise by the debtor to pay it. This is true, whether the past debt is contractual or quasi-contractual in character." Corbin on Contracts § 211 (1963)

See also: *Farnham v. O'Brien*, 22 Me. (9 Shep.) 475 (1843); *Flynn v. Currie*, 130 Me. 461, 157 A. 310 (1931).

The above-described genuine issues of material fact revealed by the record precluded an adjudication in favor of defendant as a matter of law. The presiding Justice, therefore, erroneously ordered summary judgment to be entered for defendant.

The entry is:

*Appeal sustained; judgment set aside; remanded to the Superior Court for further proceedings consistent with the opinion herein.*

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

All Justices concurring.